1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  LESLIE E. HURST (178432)
   THOMAS J. O'REARDON II (247952)
3  701 B Street, Suite 1700
   San Diego, CA  92101
4  Telephone: 619/338-1100
   619/338-1101 (fax)
5  tblood@bholaw.com
   lhurst@bholaw.com
6  toreardon@bholaw.com

7  WOLF HALDENSTEIN ADLER FREEMAN
        & HERZ, LLP
8  JANINE L. POLLACK (*pro hac vice*)
   MICHAEL LISKOW (243899)
9  270 Madison Avenue, 10th Floor
   New York, New York 10116
10 Telephone:  (212) 545-4600
   Facsimile:   (212) 545-4762
11 pollack@whafh.com
   liskow@whafh.com
12
   Attorneys for Plaintiff
13
   [Additional counsel appear on signature page.]
14

15          **UNITED STATES DISTRICT COURT**

16          **SOUTHERN DISTRICT OF CALIFORNIA**

17 ARIANNA ROSALES, and              Case No.: 11cv0973-W (KSC)
   CHARLICE ARNOLD, on Behalf of
18 Themselves, All Others Similarly    CLASS ACTION
   Situated and the General Public,
19                                     SECOND AMENDED CLASS
                                       ACTION COMPLAINT FOR:
20         Plaintiffs,                 1.   VIOLATION OF THE UNFAIR
                                            COMPETITION LAW,
21    v.                                    BUSINESS AND PROFESSIONS
                                            CODE §17200 *ET SEQ*.;
22 FITFLOP USA, LLC,                   2.   VIOLATIONS OF CONSUMERS
                                            LEGAL REMEDIES ACT, CIVIL
23         Defendant.                       CODE §1750 *ET SEQ*.; AND
                                       3.   BREACH OF EXPRESS
24                                          WARRANTY

25                                     DEMAND FOR JURY TRIAL

26                                     Judge:      Hon. Thomas J. Whelan
                                       Courtroom:  3C, 3rd Floor - Schwartz
27                                     Date Filed:  May 5, 2011
                                       Trial Date:  TBD
28

BLOOD HURST & O'REARDON, LLP

00061759

BLOOD HURST & O'REARDON, LLP

1  Plaintiff Charlice Arnold, on behalf of herself and all others similarly
2  situated, brings this action against defendant FitFlop USA, LLC ("FitFlop" or
3  "Defendant"), and states:

4  ### JURISDICTION AND VENUE

5  1.   This Court has original jurisdiction pursuant to 28 U.S.C.
6  §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds
7  the sum or value of $5,000,000 and is a class action in which some of the
8  members of the class of plaintiffs, whose number exceeds 100, are citizens of
9  states different from FitFlop.   Further, greater than two-thirds of the class
10  members reside in states other than the state in which FitFlop is a citizen.

11  2.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that
12  many of the acts and transactions giving rise to this action occurred in this
13  district and because Defendant:

14  (a)   is authorized to conduct business in this district and has
15  intentionally availed itself of the laws and markets within this district through the
16  promotion, marketing, distribution and sale of its products in this district;

17  (b)   does substantial business in this district; and

18  (c)   is subject to personal jurisdiction in this district.

19  ### NATURE OF ACTION

20  3.   Through an extensive, comprehensive, and uniform nationwide
21  marketing campaign, Defendant claims that its expensive FitFlop Footwear
22  (ranging from approximately $50-$240 per pair) with its patent-pending
23  "Microwobbleboard™ Technology" will provide to anyone who wears it a
24  variety of health benefits ordinary footwear cannot provide.  Defendant promises
25  that its shoes improve posture, increase muscle activation and toning, and reduce
26  joint strain.[1]   For example, the product packaging on FitFlop sandals states:

27

28  ---
[1]  For purposes of this Complaint, "FitFlop Footwear" or "FitFlop(s)" refers collectively to all past and present men's and women's style sandals, boots,

1
Case No. 11cv0973-W (KSC)
SECOND AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

"FitFlop Footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them." Defendant represents that independent studies show that FitFlop Footwear is proven to provide these benefits. However, Defendant's health benefit claims are deceptive, and FitFlop Footwear is not proven to provide any of these benefits.

4. Defendant's deceptive marketing campaign begins with the products' name - FitFlop - and deceptive trademarked taglines: "GET A WORKOUT WHILE YOU WALK™" and "RELIEF YOU CAN WEAR ON YOUR FEET™." The product name and trademarked taglines imply that FitFlops deliver the specific claimed benefits. Defendant's uniform and extensive advertising campaign builds on this deception.

5. There are no well-designed scientific studies that support Defendant's health benefits claim. As a recent study sponsored by the independent American Council on Exercise concluded, "wearing so-called fitness shoes will have no beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular running shoe. Additionally, there is no evidence that wearing shoes with an unstable sole design will improve muscle strength and tone more than wearing a regular running shoe." *See* John P. Porcari, PhD., *et al.*, *The Physiologic and Electromyographic Responses to Walking in Regular Athletic Shoes Versus "Fitness Shoes"* at 12, *available at* http://www.acefitness.org/getfit/ studies/toningshoes-findings.pdf ("Porcari Report").

6. Despite the deceptive nature of Defendant's claims and assertions, since 2007 Defendant has employed numerous methods to convey its uniform, deceptive messages to consumers. Defendant conveyed and continues to convey its deceptive claims about FitFlop Footwear through a variety of media,

---

clogs, slippers, and shoes marketed with Defendant's Microwobbleboard™ Technology.

SECOND AMENDED CLASS ACTION COMPLAINT

00061759

including point of sale displays, magazines, newspapers, the internet, social media websites, outdoor billboards, bus wraparounds, and on the products' packaging and hang tags. The only reason a consumer would purchase the premium-priced FitFlop Footwear (as opposed to less expensive, ordinary flip flops/sandals/other footwear) is to obtain the advertised health benefits, which FitFlop Footwear does not actually provide.

7.      As a result of Defendant's deceptive claims, consumers – including Plaintiffs and the other members of the proposed Class – have purchased a product that does not perform as advertised. Moreover, Defendant has been able to charge a significant price premium for FitFlop Footwear over other traditional, comparable footwear products that do not make deceptive health benefits claims.

8.      Plaintiff Arnold brings this lawsuit on behalf of herself and other similarly situated consumers who purchased FitFlop Footwear, in order to halt the dissemination of this deceptive advertising message, correct the false and misleading perception Defendant has created in the minds of consumers, and obtain redress for those who have purchased FitFlop Footwear. Plaintiffs allege violations of the Consumers Legal Remedies Act, the Unfair Competition Law and breach of express warranty created by Defendant's advertising, including its labeling.

## PARTIES

9.      Plaintiff Arianna Rosales is a resident of the state of California. During the time period relevant to this action, Plaintiff Rosales was exposed to Defendant's deceptive labeling and advertising claims, purchased the premium-priced FitFlop Footwear in reliance on the truth of these claims and suffered injury in fact and lost money. In reliance on Defendant's claims, on or about August 20, 2010, at Victoria's Secret, a department store chain located at Imperial Valley Mall in El Centro, California, Plaintiff Rosales purchased a pair

BLOOD HURST & O'REARDON, LLP

of FitFlop sandals for $59.99.  If she had known the truth about Defendant's claims she would not have purchased the FitFlop sandals.

10.     Plaintiff Charlice Arnold is a resident of the state of California, and resides in this District.  During the time period relevant to this action, Plaintiff Arnold was exposed to Defendant's deceptive labeling and advertising claims, purchased the premium-priced FitFlop Footwear in reliance on the truth of these claims and suffered injury in fact and lost money as a result of Defendant's unlawful conduct by purchasing the falsely advertised FitFlop Footwear. Plaintiff Arnold was exposed to Defendant's advertising in a Victoria's Secret catalog, including Defendant's claims that its FitFlop Footwear improves posture, increases muscle activation and toning, and reduces joint strain.  Shortly thereafter, Plaintiff Arnold purchased two pairs of FitFlop sandals from Victoria's Secret, one predominantly brown pair and another predominantly black and silver pair for approximately $59.99 each.  If she had known the truth about Defendant's claims, she would not have purchased the premium-priced FitFlop sandals.    Notwithstanding the above, Plaintiff Arnold is not claiming physical harm or seeking the recovery of personal injury damages.

11.     FitFlop USA LLC is a Delaware limited liability company incorporated in New York.  Its standard process address is John Zampino P.C., 405 Lexington Avenue, Suite 5002, New York, New York 10174.  FitFlop USA LLC's parent is FitFlop Limited.  Defendant markets and sells its FitFlop Footwear to consumers in the United States through authorized retailers such as Victoria's Secret, Amazon.com, Zappos.com, Nordstrom's, Macy's.com, Footsmart, and Bliss.  Based upon information and belief, Defendant provided some or all of the FitFlop Footwear advertising to its authorized retailers, and/or Defendant approved or instructed its authorized retailers about how they must advertise and market Defendant's FitFlop Footwear, to be consistent with FitFlop's uniform claims that its footwear tones legs while you walk in it.

BLOOD HURST & O'REARDON, LLP

12.     Plaintiffs are informed and believe, and thus allege, that at all times herein, Defendant's agents, employees, representatives, and/or partners, were acting within the course and scope of such agency, employment, and representation, on behalf of Defendant.

## FACTUAL ALLEGATIONS

13.     Like its competitors in the so-called "toning shoes" footwear market, Defendant claims that instability created by FitFlop Footwear's patent-pending Microwobbleboard™ design (essentially three different densities of foam rubber made of a chemical called ethylene vinyl acetate ("EVA")), results in increased toning, increased muscle activity, and reduction of joint strain.

14.     The following pictures are representative of the footwear offerings from Defendant's Microwobbleboard™ product line, which are all marketed to provide the same health benefits:



15.     All styles of FitFlop Footwear that Defendant manufactures, and/or advertises, markets, and sells feature the Microwobbleboard™ technology, which Defendant describes as a three part system comprised of: (1) a high density heel that "absorbs up to 22% more shock to help relieve joint stress;" (2) a low density midsection that "creates instability, which increases leg muscle

BLOOD HURST & O'REARDON, LLP

00061759

activation up to 16%;" and (3) a mid density toe cap that "helps maintain speed, pace, and variation" in walking. *See* FitFlop, http://www.fitflop.com/how-they-work/technology/scat/technology/ (last visited July 10, 2011). Defendant uses the following photographic image to illustrate the Microwobbleboard™ design:



## DEFENDANT'S DECEPTIVE ADVERTISING AND MARKETING

16.    In June 2007, Defendant began selling its FitFlop Footwear in the United States.  Defendant sells FitFlop Footwear to consumers in the United States through authorized retailers.  Also in 2007, Defendant launched a major advertising campaign to promote FitFlop Footwear.

17.    Defendant uniformly represents that the Microwobbleboard™ technology in all of its FitFlop Footwear allows consumers to "get a workout while you walk" because the shape and density of the soles are "biomechanically engineered" to increase the time that your leg muscles are engaged as compared with ordinary shoes.

18.    Under the "How They Work" page on Defendant's website, http://www.fitflop.com/scat/howtheywork/ (last visited July 1, 2011), which is available to the general public, Defendant states:

> FitFlop Footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them.  Studies at the Centre for Human Performance at London South Bank University (LSBU) show that normal walking in FitFlop sandals can help:

BLOOD HURST & O'REARDON, LLP

- help increase leg and bottom muscle activity (up to 30%) (so you feel less ache in your hips and knees),

    - absorb more shock than a normal shoe (up to 22%),

    - help realign ground force reaction closer to your joints,

    - reduce foot pressure.

19.     Defendant's website also links to a longer than four minute video featuring FitFlop Footwear founder Marcia Kilgore and Dr. David Cook, who helped develop the patent-pending Microwobbleboard™ technology, discussing how FitFlop Footwear works. Defendant's website is available to the general public. *See id., also available at* http://www.youtube.com/watch?v=q3uZlnKe Cxc&feature=player_embedded.

20.     Throughout the relevant time period, Defendant has marketed all of its FitFlop Footwear using similar and deceptive advertising and packaging, conveying a substantially similar message about health benefits that FitFlop Footwear purportedly provides.

21.     Defendant makes the deceptive health benefits claims in hang tags attached to each pair of FitFlop Footwear, such as the following:

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP





22.    Defendant repeats the deceptive statements in its online advertisements. The following is an example of an online advertisement from Defendant's website on "FitFlop benefits":

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP



23.     Defendant deceptively claims on its website that FitFlop Footwear can help: (a) "realign ground force reaction closer to your joints"; (b) "increase leg and bottom muscle activity (up to 30%);" and (c) relieve ache in your hips and knees, citing a test comparing FitFlop sandals to a control shoe. *See* FitFlop, http://www.fitflop.com/how-they-work/benefits/scat/benefitsforwomen/     (last visited July 1, 2011).

24.     Defendant's print advertisements contain substantially similar deceptive messages about the ability of FitFlop Footwear to provide health benefits.   The following print advertisement is illustrative, representing that walking in FitFlop sandals results in 19% more quadricep activation, 30% longer bottom muscle activation, and 16% more hamstring activation:

00061759

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   25.   Throughout Defendant's Internet and print advertisements it claims

18   that these health benefits are the result of FitFlop Footwear's

19   Microwobbleboard™ technology.

20   26.   All of Defendant's advertisements convey the same message that

21   Defendant's FitFlop Footwear provides increased muscle toning over traditional

22   footwear simply by walking in it. For example, FitFlop advertising states:

23   "FitFlops feature patent-pending Microwobbleboard™ technology so every step

24   you take in your FitFlops helps tone and trim your legs."

25
26
27
28

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7



8        27.    Similarly, another print advertisement claims that FitFlop Footwear

9    can "Tone ... your leg and bottom muscles more every single time you take a

10   step."

BLOOD HURST & O'REARDON, LLP

11
12
13
14
15
16
17
18
19
20
21
22



23       28.    The marketing for men's and women's FitFlop Footwear conveys

24   substantially the same message. For example, Defendant states that each of its

25   men's FitFlop Footwear provides the same "Benefits":

26
27
28

1

BLOOD HURST & O'REARDON, LLP

**RELIEF YOU CAN WEAR ON YOUR FEET™**

FitFlop footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them. Studies at the Centre for Human Performance at LSBU show that normal walking in FitFlop sandals* can help:

- **reduce hip joint stress (up to 8%),**

- **reduce knee joint stress (up to 20%),**

- **reduce ankle joint force (up to 11% ),**

- **reduce foot pressure concentration\***."[2]

\*   \*   \*

\* When compared to a control shoe.  Case studies were performed on Microwobbleboard technology over a forty-eight month period by Dr. David Cook, Senior Lecturer in Biomechanics, and Darren James at the Centre for Human Performance at London South Bank University (LSBU).

29.   Defendant also states that each of its women's FitFlop Footwear provides similar **"Benefits"**:

**FITFLOP. GET A WORKOUT WHILE YOU WALK™**

FitFlop footwear is biomechanically engineered to help tone and tighten your leg muscles while you walk in them.  Studies at the Centre for Human Performance at LSBU show that normal walking in FitFlop sandals* can help:

- **help increase leg and bottom muscle activity (up to 30%),**

- **absorb more shock than a normal shoe (up to 22% ),**

- **help realign ground force reaction closer to your joints (so you feel less ache in your hips and knees), reduce foot pressure.**"[3]

\*   \*   \*

---

[2]   *See* Exhibit A attached (representative collection of Defendant's "Benefits" advertising for men's footwear).

[3]   *See* Exhibit B attached (representative collection of Defendant's "Benefits" advertising for women's footwear).

00061759

1
2
3
4

       \* When compared to a control shoe.  Case studies were performed on Microwobbleboard technology over a forty-eight month period by Dr. David Cook, Senior Lecturer in Biomechanics, and Darren James at the Centre for Human Performance at London South Bank University (LSBU).

5
6

       30.    Defendant's print and website advertisements reinforce its health benefits message by using at least one purported doctor endorsement:

7
8
9

       "The FitFlop shoe is a hybrid shoe that allows a more natural form of walking giving both comfort and improved performance in the calf and hip muscle groups in comparison to a training shoe."

10

       - Dr. Phillip Graham-Smith

11
12
13
14
15

       31.    Through its labeling and advertising statements concerning its FitFlop Footwear – including those referenced above – Defendant has uniformly conveyed one message: that Defendant's products provide increased muscle activation over traditional footwear, resulting in increased muscle toning and related health benefits simply by walking in them.

16
17

**THERE IS NO ADEQUATE SUPPORT FOR DEFENDANT'S DECEPTIVE REPRESENTATIONS**

18
19
20
21
22
23
24
25
26

       32.    Defendant claims that FitFlop Footwear's major health benefits have been shown in clinical studies.  For example, on its fitflop.com website, Defendant states: Studies at the Centre for Human Performance at London South Bank University ("LSBU Study") show that normal walking in FitFlop sandals can help: (a) "increase leg and bottom muscle activity (up to 30%). (so you feel less ache in your hips and knees);" (b) "absorb more shock than a normal shoe (up to 22%);" (c) "help realign ground force reaction closer to your joints;" and (d) "reduce foot pressure and pain from heel spurs and plantar fasciitis."  *See* FitFlop, http://www.fitflop.com/scat/ howtheywork (last visited July 1, 2011).

27
28

       33.    Defendant also states that Dr. Philip Graham-Smith and Richard Jones of Salford University independently tested the health benefits of FitFlop

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1  Footwear.   *See*  FitFlop, http://www.fitflop.com/how-they-work/research/scat/
2  researchresults/ (last visited July 1, 2011) ("Salford Study").

3      34.   None of these studies, however, is reliable scientific or clinical
4  proof.  Neither the LSBU study nor the Salford Study has been published in peer-
5  review journals.  Defendant also has not made either of the studies publicly
6  available, including on its website. Furthermore, the LSBU study was conducted
7  by the developers of the Microwobbleboard™ technology, Dr. David Cook and
8  Darren James.

9      35.   Contrary to Defendant's statements about the increased muscle
10  activation effect of its FitFlop Footwear, walking in Defendant's FitFlop
11  Footwear provides no greater amount of muscle activation or exercise response
12  than walking in ordinary footwear.   Indeed, clinical evidence suggests that
13  Defendant's claims regarding the FitFlop Footwear are deceptive.

14      36.   For example, two studies funded by the American Council on
15  Exercise by the Departments of Physical Therapy and Exercise and Sports
16  Science of the University of Wisconsin-La Crosse compared exercise response
17  rates and muscle activation rates from walking in three popular varieties of
18  toning shoe (referred to in the study as "fitness shoes"), against walking in
19  regular athletic shoes.  The American Council on Exercise publicized the results
20  of this study on its website through a news article released in August 2010,
21  http://www.acefitness.org/certifiednewsarticle/720/will-toning-shoes-really-give-
22  you-a-betterbody/ (last visited July 1, 2011).

23      37.   One of these recent studies "found no evidence that walking in
24  fitness shoes had any positive effect on exercise heart rate, oxygen consumption,
25  or caloric expenditure compared to walking in a regular running shoe."  *See*
26  Porcari Report at 11.  In fact, it found "no significant differences in muscle
27  activation levels for any of the muscles tested between any of the shoe
28  conditions." *Id*. at 12.  The "muscles tested" included muscles from the buttocks

BLOOD HURST & O'REARDON, LLP

(gluteus maximus), calf (gastrocnemius) and hamstring (biceps femoris) muscle groups. *See id*. at 6.

38.    The Porcari Report concluded that "wearing so called fitness shoes will have no beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular running shoe.  Additionally, there is no evidence that wearing shoes with an unstable sole design will improve muscle strength and tone more than wearing a regular running shoe." *Id*. at 12.

39.    As Dr. Porcari stated, "Don't buy these shoes because of the claims that you're going to tone your butt more or burn more calories.  That's absolutely wrong[.]"    American   Council   on   Exercise,   http://www.acefitness.org/ getfit/studies/toningshoes072010.pdf (last visited Apr. 27, 2011).

40.    Moreover,  one  published  study  conducted  to  determine  the effectiveness of unstable shoe construction (rocker bottom shoes) on reducing pain and increasing balance in persons with knee osteoarthritis found that there was no significant difference between the test group that wore an unstable shoe construction and the control group in either pain reduction or increased balance. Benno M. Nigg *et al.*, *Unstable Shoe Construction and Reduction of Pain in Osteoarthritis Patients,* Medicine & Science in Sports & Exercise (2006)(peer-reviewed clinical evidence).

41.    To further reinforce the appearance that its claims are legitimate and that the FitFlop Footwear is different from ordinary footwear, Defendant consistently represents that its product line has "the backing of the medical profession ... from top physiotherapists to leading podiatrists."  Press Release, *FitFlop Shoes – Can They Be Beaten?* (Oct. 12, 2010), http://www.openpr.com/ news/147560/FitFlop-Shoes-Can-They-Be-Beaten.html  (last  visited  July  1, 2011).

42.    This representation is deceptive.  In fact, many notable physicians and podiatrists do not endorse FitFlop Footwear.  For example, the president of

BLOOD HURST & O'REARDON, LLP

the American Academy of Podiatric Sports Medicine stated that toning shoes pose "major risks, especially for adults.  Creating instability, on adults especially is not a good thing."[4]  Likewise, Lisa Callahan, a sports medicine doctor at New York's Hospital for Special Surgery, said "there's just nothing magical about a [toning] shoe like this."[5]  In a Newsweek article, "Hyping Hope," Doug Gurley, an orthopedic surgeon and sports-medicine specialist at the San Juan Regional Medical Center in Farmington, N.M., says he's "highly suspicious" of the claim that destabilizing the foot has any health or fitness benefit.[6]

43.    In furtherance of its deceptive advertising, Defendant also claims on its website and advertising materials that FitFlop sandals have "been approved by the American Podiatric Medical Association- APMA."  However, the APMA Seal of Acceptance only means the shoes "allow for the most normal foot function and promote quality health."  The APMA does not endorse the shoes' "toning capabilities" as Defendant's website deceptively implies.

44.    Even though walking in Defendant's FitFlop Footwear offers no greater benefit in toning or muscle activation than walking in a traditional (and lower-priced) walking shoe, FitFlop Footwear has been a huge commercial success for Defendant: "FitFlop ha[s] been the top selling fitness Footwear brand since their launch a few years ago."  *See, e.g.*, Press Release, *Customers Are Getting Excited About FitFlops Spring 2011 Collection* (Nov. 12, 2010), *available at* http://express-press-release.net/79/Customers-Getting-Excited-About-FitFlops-Spring-2011-Collection-54891029.php (last visited July 1,

---

[4]  Amber Smith, *Can Easytone, Fitflops, Trim Treads or Other Shoes Tone Your Body,* Syracuse Blog (Aug. 24, 2010), http://blog.syracuse.com/cny/2010/08/ can_easytone_fitflops_trimtreads_or_other_shoes_tone_your_body.html (last visited Apr. 27, 2011).

[5]  *Flops That Make You Fit? '20/20' Tries Out the FitFlop*, (ABC Television Broadcast July 9, 2008), *available at* http://www.youtube.com/watch?v=xaY_15HLmts (last visited Apr. 27, 2011).

[6]  Kendyl Salcito, *Hyping Hope*, Newsweek, July 26, 2007, *available at* http://www.newsweek.com/2007/07/25/hyping-hope.html.

1    2011).  Indeed, the press release stated that the winter range of women's boots

2    offered by Defendant was "literally selling out."  *Id*.

3         45.    From June 2007 to July 2008, Defendant sold more than 1.5 million

4    pairs of FitFlops in the United States.  *See* Eamon McNiff and Ann Varney,

5    *Flops That Make You Fit? '20/20' Tries Out the FitFlop*, ABC News, July 9,

6    2008, *available at* http://abcnews.go.com/ Health/story?id=5246637&page=1

7    (last visited July 1, 2011).  According to Defendant's Facebook website, over 6

8    million pairs of FitFlops have been sold since their launch in May 2007.[7]

9         46.    Based upon the purported significant health benefits conveyed in its

10   marketing and advertising, Defendant is able to price FitFlop Footwear at a

11   premium to other similar "non-toning" footwear.  In fact, the approximate $60.00

12   retail price of FitFlop sandals is roughly double the price of other "non-toning"

13   flip flops sold by competitors.

## CLASS DEFINITION AND ALLEGATIONS

14

15        47.    Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil

16   Procedure, Plaintiff Arnold brings this action on behalf of herself and members

17   of a Class defined as:

18           All persons who purchased Defendant's FitFlop Footwear
             until the date notice is provided to the Class.  Excluded from the
19           Class are Defendant and its officers, directors and employees, and
             those who purchased FitFlop Footwear for the purpose of resale or
20           who assert claims for personal injury.

21

22        48.    ***Numerosity***.  The members of the Class are so numerous that

23   joinder of all members of the Class is impracticable.  Plaintiff Arnold is informed

24   and believes that the proposed Class contains thousands of purchasers of FitFlop

25   Footwear who have been damaged by Defendant's conduct as alleged herein.

26   The precise number of Class members is unknown to Plaintiff Arnold.  The true

27

28   _____

[7] *See*   http://www.facebook.com/FitFlopUSA#!/FitFlopUSA?sk=info   (last
visited July 1, 2011).

BLOOD HURST & O'REARDON, LLP

1   number of Class members is known by the Defendant, however, and thus

2   potential Class members may be notified of the pendency of this action by first

3   class mail, electronic mail, and/or published notice.

4       49.   ***Existence and Predominance of Common Questions of Law and***

5   ***Fact***.   This action involves common questions of law and fact, which

6   predominate over any questions affecting individual Class members.   Common

7   questions of law and fact include, but are not limited to, the following:

8       (a)   whether Defendant had adequate substantiation for its claims

9   prior to making them;

10      (b)   whether the claims discussed above are true, or are

11  misleading, or reasonably likely to deceive;

12      (c)   whether Defendant's alleged conduct violates public policy;

13      (d)   whether the alleged conduct constitutes violations of the laws

14  asserted;

15      (e)   whether Defendant engaged in false or misleading

16  advertising;

17      (f)   whether Plaintiff Arnold and Class members have sustained

18  monetary loss and the proper measure of that loss; and

19      (g)   whether Plaintiff Arnold and Class members are entitled to

20  injunctive relief.

21      50.   ***Typicality***.   Plaintiff Arnold's claims are typical of the claims of the

22  members of the Class because, *inter alia*, all Class members were injured

23  through the uniform misconduct described above, were subject to Defendant's

24  deceptive statements, including deceptive claims that accompanied each and

25  every pair of FitFlop Footwear sold.   Plaintiff Arnold is advancing the same

26  claims and legal theories on behalf of herself and all members of the Class.

27      51.   ***Adequacy of Representation***.   Plaintiff Arnold will fairly and

28  adequately protect the interests of the members of the Class.   Plaintiff Arnold has

BLOOD HURST & O'REARDON, LLP

00061759

1   retained highly competent counsel and experienced class action attorneys to

2   represent her interests and that of the Class.  Plaintiff Arnold and her counsel

3   have the necessary financial resources to adequately and vigorously litigate this

4   class action.  Plaintiff Arnold has no adverse or antagonistic interests to those of

5   the Class.  Plaintiff Arnold is willing and prepared to serve the Court and the

6   Class members in a representative capacity with all of the obligations and duties

7   material thereto and are determined to diligently discharge those duties by

8   vigorously seeking the maximum possible recovery for Class members.

9       52.   ***Superiority***.  A class action is superior to other available means for

10  the fair and efficient adjudication of this controversy since individual joinder of

11  all Class members is impracticable.  The damages or other financial detriment

12  suffered by individual Class members is relatively small compared to the burden

13  and expense that would be entailed by individual litigation of their claims against

14  the Defendant.   It would thus be virtually impossible for the Class, on an

15  individual basis, to obtain effective redress for the wrongs done to them.

16  Furthermore, even if Class members could afford such individualized litigation,

17  the court system could not.  Individualized litigation would create the danger of

18  inconsistent or contradictory judgments arising from the same set of facts.

19  Individualized litigation would also increase the delay and expense to all parties

20  and the court system from the issues raised by this action.  By contrast, the class

21  action device provides the benefits of adjudication of these issues in a single

22  proceeding, economies of scale, and comprehensive supervision by a single

23  court, and presents no unusual management difficulties under the circumstances

24  here.

25      53.   Unless a Class is certified, Defendant will retain monies received as

26  a result of its conduct that were taken from Plaintiff Arnold and Class members.

27  Unless a Class-wide injunction is issued, Defendant will continue to commit the

28

BLOOD HURST & O'REARDON, LLP

1   violations alleged, and the members of the Class and the general public will

2   continue to be deceived.

3                                   **COUNT I**

4           **Violation of Business & Professions Code §17200,** *et seq.*

5           54.     Plaintiffs repeat and reallege the allegations contained in the

6   paragraphs above, as if fully set forth herein.

7           55.     Plaintiff Rosales brings this claim individually and Plaintiff Arnold

8   brings this claim individually and on behalf of the Class.

9           56.     As alleged herein, Plaintiffs have suffered injury in fact and lost

10  money or property as a result of Defendant's conduct because they purchased

11  FitFlop Footwear in reliance of Defendant's claims detailed above, but did not

12  receive a product containing the toning and other benefits detailed above.

13          57.     The Unfair Competition Law, Business & Professions Code

14  §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair"

15  business act or practice and any false or misleading advertising.  In the course of

16  conducting business, Defendant committed unlawful business practices by, *inter*

17  *alia*, making the representations (which also constitutes advertising within the

18  meaning of §17200) and omissions of material facts, as set forth more fully

19  herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770, Business &

20  Professions Code §§17200, *et seq.*, 17500, *et seq.*, California Health & Safety

21  Code §110390, *et seq.*, 21 U.S.C. §301, *et seq.,* and the common law.

22          58.     Plaintiffs and the Class reserve the right to allege other violations

23  of law which constitute other unlawful business acts or practices.  Such conduct

24  is ongoing and continues to this date.

25          59.     Defendant's actions also constitute "unfair" business acts or

26  practices because, as alleged above, *inter alia*, Defendant engages in false

27  advertising, misrepresents and omits material facts regarding its FitFlop

28  Footwear, and thereby offends an established public policy, and engages in

BLOOD HURST & O'REARDON, LLP

                                                        20                    Case No. 11cv0973-W (KSC)
                              SECOND AMENDED CLASS ACTION COMPLAINT

immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

60.     As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

61.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

62.     Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

63.     Defendant's actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, were false, misleading and likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

64.     Plaintiffs and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above.  This reliance has caused harm to Plaintiffs and other members of the Class who each purchased Defendant's FitFlop Footwear.  Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices. The injury in fact and loss of money does not relate to any loss concerning personal injury or emotional distress.  Plaintiffs do not seek, individually or on behalf of others similarly situated, recovery for any loss concerning personal injury or emotional distress.  Plaintiffs have not suffered personal injuries.

65.     As a result of its deception, Defendant has been able to reap unjust revenue and profit.

BLOOD HURST & O'REARDON, LLP

00061759

BLOOD HURST & O'REARDON, LLP

66.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

67.     Plaintiff Rosales, individually, and Plaintiff Arnold Ojeda, on behalf of herself, all others similarly situated, and the general public, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competition and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II

### Violations of the Consumers Legal Remedies Act –
### Civil Code §1750 *et seq.*

68.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

69.     Plaintiff Rosales brings this claim individually and Plaintiff Arnold brings this claim individually and on behalf of the Class.

70.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiffs are consumers as defined by California Civil Code §1761(d).  Defendant's FitFlop Footwear is a good within the meaning of the Act.

71.     Defendant violated the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of FitFlop Footwear:

(5)     Representing that [FitFlop Footwear has] . . . approval, characteristics, . . . uses [or] benefits . . . which [it does] not have . . . .

*        *        *

(7)     Representing that [FitFlop Footwear is] of a particular standard, quality or grade . . . if [it is] of another.

00061759

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

\*      \*      \*

(9)    Advertising goods . . . with intent not to sell them as advertised.

\*      \*      \*

(16)   Representing that [FitFlop Footwear has] been supplied in accordance with a previous representation when [it has] not.

72.    Defendant violated the Act by representing through its advertisements FitFlop Footwear as described above when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

73.    Pursuant to California Civil Code §1782(d), Plaintiffs and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

74.    Pursuant to §1782 of the Act, by letter dated May 4, 2011, Defendant was notified in writing by certified mail of the particular violations of §1770 of the Act, which notice demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

75.    Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiffs further seek claims for actual, punitive and statutory damages, as appropriate.

76.    Defendant's conduct is malicious, fraudulent and wanton.

77.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

23                    Case No. 11cv0973-W (KSC)
SECOND AMENDED CLASS ACTION COMPLAINT

1

**COUNT III**

2

**Breach of Express Warranty**

3    78.    Plaintiffs repeat and reallege the allegations contained in the

4    paragraphs above, as if fully set forth herein.

5    79.    Plaintiff Rosales brings this claim individually and Plaintiff Arnold

6    brings this claim individually and on behalf of the Class.

7    80.    Plaintiffs, and each member of the Class, formed a contract with

8    Defendant at the time Plaintiffs and the other members of the Class purchased

9    FitFlop Footwear.    The terms of that contract include the promises and

10   affirmations of fact made by Defendant on its FitFlop Footwear packaging and

11   product hang tags, and through the FitFlop Footwear marketing campaign, as

12   described above.    This product packaging and advertising constitutes express

13   warranties, became part of the basis of the bargain, and is part of a standardized

14   contract between Plaintiffs and the members of the Class on the one hand, and

15   Defendant on the other.

16   81.    All conditions precedent to Defendant's liability under this contract

17   have been performed by Plaintiffs and the Class.

18   82.    Defendant breached the terms of this contract, including the

19   express warranties, with Plaintiffs and the Class by not providing FitFlop

20   Footwear that could provide the benefits described above.    Such express

21   warranties breached by Defendant include the FitFlop Footwear representations

22   set forth above in ¶¶4, 9-10, 15, 17-18, 21-24, and 26-30, as well as in Exhibits A

23   and B attached to this Complaint.

24   83.    As a result of Defendant's breach of its contract, Plaintiffs and the

25   Class have been damaged in the amount of the purchase price of the FitFlop

26   Footwear they purchased.

27

28

BLOOD HURST & O'REARDON, LLP

00061759

BLOOD HURST & O'REARDON, LLP

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding Plaintiffs and the proposed Class members economic damages related to the price of the FitFlop Footwear purchased (and not for any damages related to physical and/or emotional injuries);

C.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

D.    Awarding injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.    Ordering Defendant to engage in a corrective advertising campaign;

F.    Awarding attorneys' fees and costs;

G.    Awarding pre-judgment and post-judgment interest at the legal rate; and

H.    Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable

Dated:  June 27, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)

By:              *s/ Timothy G. Blood*
                 TIMOTHY G. BLOOD

00061759

701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

WOLF HALDENSTEIN ADLER FREEMAN
    & HERZ, LLP
JANINE L. POLLACK (*pro hac vice*)
MICHAEL LISKOW (243899)
270 Madison Avenue, 10th Floor
New York, New York 10116
Telephone:  (212) 545-4600
Facsimile:   (212) 545-4762
pollack@whafh.com
liskow@whafh.com

WOLF HALDENSTEIN ADLER FREEMAN
    & HERZ, LLP
FRANCIS M. GREGOREK (144785)
BETSY C. MANIFOLD (182450)
RACHELE R. RICKERT (190634)
MARIS C. LIVESAY (223247)
750 B Street, Suite 2770
San Diego, CA  92101
Telephone:  619/239-4599
619/234-4599 (fax)
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
livesay@whafh.com

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/798-5860 (fax)
eryan@bffb.com
psyverson@bffb.com

SHEPHERD FINKELMAN MILLER
    & SHAH LLP
JAMES C. SHAH
35 East State Street
Media, PA 19063
Telephone: 610/891-9880
610/891-9883 (fax)
jshah@sfmslaw.com

BLOOD HURST & O'REARDON, LLP

00061759

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EDGAR LAW FIRM, LLC
JOHN F. EDGAR
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: 816/531-0033
816/531-3322 (fax)
jfe@edgarlawfirm.com

POMERANTZ GROSSMAN HUFFORD
    DAHLSTROM & GROSS, LLP
JAYNE A. GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL  33326
Telephone: 954/315-3454
954/315-3455 (fax)
jagoldstein@pomlaw.com

*Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

27
Case No. 11cv0973-W (KSC)
SECOND AMENDED CLASS ACTION COMPLAINT

00061759

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on June 27, 2013, I electronically filed the foregoing

3   with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to the e-mail addresses denoted on the Electronic Mail

5   Notice List.

6       Executed on June 27, 2013.

7

8                              s/  *Timothy G. Blood*
                            TIMOTHY G. BLOOD

9   BLOOD HURST & O'REARDON, LLP
10   701 B Street, Suite 1700
    San Diego, CA  92101
11   Telephone:  619/338-1100
    619/338-1101 (fax)
12   tblood@bholaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00061759