BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

WOLF HALDENSTEIN ADLER FREEMAN
   & HERZ, LLP
JANINE L. POLLACK (*pro hac vice*)
MICHAEL LISKOW (243899)
270 Madison Avenue, 10th Floor
New York, New York 10116
Telephone: (212) 545-4600
Facsimile: (212) 545-4762
pollack@whafh.com
liskow@whafh.com

Attorneys for Plaintiff and Proposed Class
Counsel

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANNA ROSALES, and CHARLICE ARNOLD, on Behalf of Themselves, All Others Similarly Situated and the General Public,<br><br>            Plaintiffs,<br><br>      v.<br><br>FITFLOP USA, LLC,<br><br>            Defendant. | Case No.: 11cv0973-W (KSC)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, ISSUANCE OF NOTICE TO THE CLASS, AND SETTING OF FINAL APPROVAL HEARING**<br><br>Judge:       Hon. Thomas J. Whelan<br>Courtroom:  3C, 3rd Floor - Schwartz |

*Left margin vertical text:* BLOOD HURST & O'REARDON, LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................... 1

II.   HISTORY OF THE LITIGATION .......................................... 3

      A.    Pre-Filing Investigation ............................................... 3

      B.    The Complaints, Defendant's Motions to Dismiss and to
            Strike, and Plaintiff's Motion for Class Certification ....... 4

      C.    Discovery and Experts ................................................. 5

            1.    Named Party Discovery and Related Motion Practice ........... 5

            2.    Expert and Third Party Discovery, and Related
                  International Discovery Motion Practice .................. 6

      D.    Settlement Negotiations ............................................... 7

III.  SETTLEMENT TERMS .......................................................... 8

      A.    The Settlement Class .................................................. 8

      B.    Relief to Class Members ............................................. 8

            1.    Injunctive Relief ............................................ 8

            2.    Monetary Relief ............................................. 8

            3.    Notice and Administration Costs, Attorneys' Fees and
                  Expenses, and Plaintiffs' Service Awards ............... 11

      C.    The Class Notice Plan .............................................. 11

IV.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR
      PRELIMINARY APPROVAL ................................................. 14

      A.    The Strengths of Plaintiff's Case and Risks Inherent in
            Continued Litigation and in Securing Certification Favor
            Preliminary Approval .............................................. 16

      B.    The Risk, Complexity, Expense, and Duration of the
            Litigation Favor Preliminary Approval ...................... 17

      C.    The Substantial Relief Provided by the Settlement Agreement
            Favors Preliminary Approval .................................... 19

      D.    The Proposed Settlement Resulted from Serious, Informed
            and Non-Collusive Arm's-Length Negotiations ............ 20

      E.    The Settlement Agreement Is Fair to Plaintiff and Class
            Members ............................................................. 21

00066396

BLOOD HURST & O'REARDON, LLP

V.     THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED .......................................................................... 22

VI.    THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED ............................................................................... 24

       A.    The Class Satisfies Federal Rule of Civil Procedure 23(a) ............. 25

             1.    Numerosity ...................................................................... 25

             2.    Commonality .................................................................... 25

             3.    Typicality ........................................................................ 26

             4.    Adequacy of Representation ............................................ 27

       B.    The Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3) .................................................... 28

             1.    Common Questions Predominate ................................... 29

             2.    A Class Action is the Superior Method to Settle this Controversy .................................................................... 30

VII.   PLAINTIFF SHOULD BE APPOINTED CLASS REPRESENTATIVE AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE CLASS ................................................... 31

VIII.  THE PROPOSED SCHEDULE OF EVENTS ......................................... 32

IX.    CONCLUSION ................................................................................. 32

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00066396

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................ 29, 31

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010).............................................. 20

*Churchill Village, LLC v. Gen. Elec. Co.*,
361 F.3d 566 (9th Cir. 2004) .......................................................... 14

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................ 14

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) .................................................................. 17

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ........................................................ 23

*Deposit Guaranty Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ...................................................................... 31

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ...................................................................... 22

*In re Employee Benefit Plans Secs. Litig.*,
No. 3-92-708, 1993 U.S. Dist. LEXIS 21226
(D. Minn. June 2, 1993)................................................................ 20

*In re Emulex Corp.*,
210 F.R.D. 717 (C.D. Cal. 2002) .................................................... 28

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......................................................... 26

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) ...................................................................... 29

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................ *passim*

BLOOD HURST & O'REARDON, LLP

00066396

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................ 26

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) .............................................................. 29, 30

*Jack v. Hartford Fire Ins. Co.*,
    No. 3:09-cv-1683 MMA (JMA), 2011 U.S. Dist. LEXIS 118764
    (S.D. Cal. Oct. 13, 2011) ............................................................................ 16

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) .................................................................. 29

*Johnson v. General Mills, Inc.*,
    275 F.R.D. 282 (C.D. Cal. 2011) .................................................................. 26

*Jordan v. Los Angeles County*,
    669 F.2d 1311 (9th Cir. 1982) ...................................................................... 25

*Keilholtz v. Lennox Health Prods., Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010) .............................................................. 26, 27

*Lane v. Facebook*,
    696 F.3d 811 (9th Cir. 2012) ........................................................................ 10

*Local Joint Exec. Bd. of Culinary/Bartender Trust
    Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...................................................................... 28

*In re M.L. Stern Overtime Litig.*,
    No. 07-cv-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 94671
    (S.D. Cal. October 9, 2009) .......................................................................... 22

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996) .............................................................. 20

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y 1984) ................................................................ 18

*In re ML. Stern Overtime Litig.*,
    No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650
    (S.D. Cal. Apr. 13, 2009) ........................................................................ 15, 21

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ........................................................................ 27

BLOOD HURST & O'REARDON, LLP

iv                    Case No. 11cv0973-W (KSC)
MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

00066396

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...................................................................... 22

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ........................................................ 10

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 15

*Officers for Justice v. Civil Serv. Comm.*,
   688 F.2d 615 (9th Cir. 1982) ..................................................... 3, 15

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................... 14

*Rodriguez v. West Publ'g Co.*,
   563 F.3d 948 (9th Cir. 2009) ................................................... *passim*

*Rosales v. FitFlop USA, LLC*,
   882 F. Supp. 2d 1168 (S.D. Cal. 2012) ........................................... 4

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ................................................... 31

*In re Simon v. Toshiba America*,
   No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501
   (N.D. Cal. Apr. 30, 2010) ............................................................. 22

*Six (6) Mexican American Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ........................................................ 10

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
   No. 11-2308, 2012 U.S. Dist. LEXIS 113641
   (W.D. Ky. Aug. 13, 2012) ............................................................. 23

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ....................................................... 23

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ......................................................... 27

*United States v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ......................................................... 17

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ......................................................... 30

BLOOD HURST & O'REARDON, LLP

00066396

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................... 15, 16

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971) ................................................................. 31

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................. 25

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ........................................... 20

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) .......................................... *passim*

*Williams v. Costco Wholesale Corp.*,
    No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674
    (S.D. Cal. Mar. 4, 2010) ......................................................... 22

*Wright v. Linkus Enterps., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ............................................. 24

*Young v. Polo Retail, LLC*,
    No. C-02-4546 (VRW), 2006 U.S. Dist. LEXIS 81077
    (N.D. Cal. Oct. 25, 2006) ........................................................ 16

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................. 30

**Statutes and Rules**

California Business & Professions Code §17200, *et seq.* ................................. 1, 27

California Civil Code §1770, *et seq.* ............................................................. 1, 27

Federal Rules of Civil Procedure
    Rule 9(b) ................................................................................................. 4
    Rule 23 ..................................................................................... 23, 24, 25
    Rule 23(a) ............................................................................................. 25
    Rule 23(a)(1) ......................................................................................... 25
    Rule 23(a)(3) ......................................................................................... 26
    Rule 23(a)(4) ......................................................................................... 27
    Rule 23(b)(3) ................................................................................ *passim*
    Rule 23(b)(3): (1) ................................................................................. 28

BLOOD HURST & O'REARDON, LLP

00066396

Rule 23(e) ................................................... 15

Rule 23(g)(1) ................................................ 31

**Other Authorities**

David F. Herr, *Annotated Manual for Complex Litigation*,
§21.632 (4th ed. 2008)............................................... 3, 15

David F. Herr, *Annotated Manual for Complex Litigation*,
§21.633 (4th ed. 2008)............................................... 15

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§11.25 (4th ed. 2002)............................................... 3

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§11.41 (4th ed. 2002)............................................... 20

7A C.A. Wright, A.R. Miller, & M. Kane,
*Federal Practice & Procedure* §1777 (2d ed. 1986) ................... 28

7A C.A. Wright, A.R. Miller, & M. Kane,
*Federal Practice & Procedure* §1778 (2d ed. 1986) ................... 29

BLOOD HURST & O'REARDON, LLP

Case No. 11cv0973-W (KSC)

MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

00066396

1  Plaintiff Charlice Arnold ("Plaintiff") submits this memorandum in
2  support of the Parties' joint motion for entry of the [Proposed] Order re:
3  Preliminarily Approval of Class Action Settlement.   The Stipulation of
4  Settlement ("Stipulation" or "Settlement") was filed concurrently herewith.

5  **I.    INTRODUCTION**

6  Plaintiff seeks preliminary approval of the proposed nationwide Settlement
7  of this class action against defendant FitFlop USA, LLC, FitFlop Limited, Brand
8  Slam Ltd., and Marcia Dyann Kilgore ("Defendant" or "FitFlop").[1]   The
9  Settlement meets Plaintiff's goals of this litigation – monetary relief far
10 exceeding the alleged retail price premium and injunctive relief prohibiting
11 FitFlop from making the alleged misrepresentations on a going-forward basis for
12 up to five years absent scientific evidence substantiating the claims.[2]

13 Plaintiff alleged that FitFlop's advertising for FitFlop Footwear was false,
14 deceptive, and likely to mislead consumers because FitFlop Footwear does not
15 strengthen or tone muscles, reduce joint strain, burn calories, assist in weight
16 loss, reduce cellulite, or provide relief from a host of medical conditions.
17 Plaintiff alleged that on the basis of these misrepresentations, FitFlop was able to
18 charge a price premium for FitFlop Footwear over other sandals and shoes.  But,
19 as Plaintiff alleged, FitFlop's health benefits representations are false, misleading
20 and reasonably likely to deceive the public.  Plaintiff alleged causes of action for
21 violations of California's Consumers Legal Remedies Act ("CLRA"), Civ. Code
22 §1770, *et seq.*, violation of California's Unfair Competition Law ("UCL"), Bus.
23 & Prof. Code §17200, *et seq.*, and breach of express warranty.

24

25  [1]    All capitalized terms have the same meaning as set forth in the Stipulation.
26  [2]    For a period of five years from the Effective Date, FitFlop will not make
    representations that FitFlop Footwear is effective in strengthening, toning,
27  burning calories, or assisting in weight loss unless, at the time of making such
    representation, it possesses and relies upon competent and reliable scientific
28  evidence that substantiates that the representations are true.  *See* Stipulation, at
    §IV(B)(2).

Blood Hurst & O'Reardon, LLP

As a result of this Settlement, Plaintiff has achieved the significant goals of this consumer protection litigation – monetary compensation reimbursing Class Members for their purchases of FitFlop Footwear, and injunctive relief preventing FitFlop from making the claims at issue. In short, each member of the proposed Class is eligible to receive a refund of up to the full average retail price paid for FitFlop Footwear. The Settlement makes monetary refunds available without any proof of purchase requirement for up to two pairs of footwear, and permits Class Members to submit Claims for each pair of FitFlop Footwear they purchased.

The proposed Class that the Parties jointly request that the Court conditionally certify for settlement is:

> All persons or entities that purchased FitFlop Footwear in the United States from January 1, 2007, up to and including the date of the first dissemination of the Class Notice.

Excluded from the Class are: (a) Defendant's board members or executive-level officers, including its attorneys; (b) persons or entities who purchased the FitFlop Footwear primarily for the purpose of resale; (c) retailers or re-sellers of FitFlop Footwear; (d) governmental entities; (e) persons or entities who or which timely and properly exclude themselves from the Class as provided in the Agreement; and (f) persons or entities who purchased the FitFlop Footwear via the Internet or other remote means while not residing in the United States. Also excluded from the Class are claims for personal injuries. *See* Stipulation, at §II, ¶10.

Class Notice specifically targeting Class Members and advising potential them of the Settlement benefits and their rights will be published nationwide in print and online publications and posted on the Settlement Website in accordance with a media plan designed by experts in class action notice and administration. *See* Stipulation, at §VII and Ex. 6.

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the

BLOOD HURST & O'REARDON, LLP

settlement" so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") §21.632 (4th ed. 2008). In so doing, the Court reviews the Settlement to determine that it is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, as set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval. Thus, Plaintiff respectfully requests that the Court enter the [Proposed] Order re: Preliminary Approval of Class Action Settlement that, among other things: (1) conditionally certifies the Class for settlement purposes; (2) conditionally designates Plaintiff Charlice Arnold as Class Representative; (3) appoints Blood Hurst and O'Reardon, LLP and Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel for the Class; (4) grants preliminary approval of the Settlement; (5) approves the proposed Class Notice Plan; and (6) schedules a Final Approval Hearing for the Settlement.

## II.   HISTORY OF THE LITIGATION

### A.   Pre-Filing Investigation

Beginning in September 2010, Class Counsel undertook significant investigations before ultimately filing a related proposed class action entitled *Gourin v. FitFlop USA, LLC*, No. 11-cv-2033 (S.D.N.Y.) in March 2011. *See* Declaration of Timothy G. Blood In Support of Motion for Preliminary Approval of Class Action Settlement ("Blood Decl."), ¶4. These investigations included collecting and reviewing the advertising at issue, researching the advertising, pricing and components in FitFlop Footwear's competitor products, and gathering scientific studies and industry pronouncements concerning the ability

BLOOD HURST & O'REARDON, LLP

of FitFlop Footwear and other toning shoe products to provide the advertised benefits. Class Counsel also worked with an expert in the field of the biomechanical effects of footwear.

### B. The Complaints, Defendant's Motions to Dismiss and to Strike, and Plaintiff's Motion for Class Certification

On May 4, 2011, plaintiff Arianna Rosales filed a class action complaint captioned *Rosales v. FitFlop USA, Inc.*, No. 3:11-cv-00973-W(JMA) in the United States District Court for the Southern District of California, on behalf of herself and all other consumers who purchased FitFlop Footwear. (D.E. No. 1). On July 15, 2011, plaintiff Arianna Rosales and Plaintiff Charlice Arnold filed a first amended class action complaint, and, thereafter, Ms. Rosales filed a motion for withdrawal as named plaintiff. (D.E. Nos. 10-11).

On August 19, 2011, Defendant filed a motion to dismiss, and, in the alternative, to strike the amended complaint. (Doc No. 14). Defendant argued for dismissal because of, *inter alia*, an alleged failure to satisfy Fed. R. Civ. P. Rule 9(b)'s pleading requirements, and because Plaintiff lacked Article III and statutory standing. Defendant also argued in the alternative that the class allegations should be stricken. On February 8, 2012, the Court issued an order denying Defendant's motion to dismiss, and, in the alternative, to strike, in its entirety. *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012). On February 22, 2012, FitFlop filed its answer to the first amended complaint, in which it expressly denied the allegations therein. (D.E. No. 25).

On March 25, 2013, after significant discovery and related motion practice (discussed below), Class Counsel filed a motion for class certification, which proposed Plaintiff or Angie Ojeda as the class representative. (D.E. No. 76). In addition to voluminous evidentiary support, Plaintiff submitted the Declaration of Thomas J. Maronick, DBA, JD, a marketing expert who reviewed FitFlop's

BLOOD HURST & O'REARDON, LLP

1  extensive advertising and conducted a scientific survey for this litigation.  The

2  Parties fully briefed Plaintiff's motion for class certification.  (D.E. Nos. 87, 90).

3  On April 2, 2013, on behalf of plaintiff Barbara Glaberson, Plaintiff's

4  Counsel filed a complaint in the United States District Court for the District of

5  New Jersey making essentially the same allegations as the California action.  *See*

6  *Glaberson v. FitFlop USA, LLC*, Case No. 13-cv-02051-NLH-AMD (D.N.J.).

7  The complaint in *Glaberson* named as defendants FitFlop USA, LLC, FitFlop

8  Limited, Brand Slam Ltd., and Marcia Diane Kilgore, and alleged violations of

9  New Jersey's consumer fraud law, and breach of express warranty.  Defendants

10  had moved to dismiss the *Glaberson* complaint and that motion was fully briefed

11  at the time of the instant Settlement.  *See Glaberson*, D.E. Nos. 20, 26, 28.

12  **C.    Discovery and Experts**

13  **1.    Named Party Discovery and Related Motion Practice**

14  Starting in June 2012, Plaintiff began serving discovery requests.  In total,

15  Plaintiff served three sets of interrogatories, two sets of requests for admissions,

16  and a set of document requests.  In the course of discovery, and following

17  negotiation of a detailed protocol for the production of electronically stored

18  information, Plaintiffs' Counsel received approximately 473,022 pages of

19  documents from Defendant.  Blood Decl., ¶3.  Plaintiff's Counsel established a

20  dedicated document database for this litigation to review and categorize

21  documents received by Defendant and third-parties.  *Id.*  In both the United

22  States and in England, Plaintiff's Counsel also took five depositions of

23  Defendant's current or former employees.  *Id.*, ¶13.  These individual and

24  corporate designee depositions included Defendant's Founder and former Chief

25  Marketing Officer, U.S. President, Press Officer, U.S. Finance Director, and the

26  former Director of North America.  *Id.*

27  Defendant also conducted substantial discovery of Plaintiff.  Defendant

28  served interrogatories and document requests, to which Plaintiff provided written

BLOOD HURST & O'REARDON, LLP

1    responses and documents.  *Id.*, ¶12.  Defendant also took Plaintiff's deposition.

2    *Id.*, ¶13.

3        Throughout the course of this litigation, the Parties engaged in substantial,

4    discovery-related motion practice.  In total, Plaintiff filed five motions to compel

5    further discovery responses from Defendant.  (D.E. Nos. 39 (August 20, 2012),

6    47 (October 18, 2012), 52 (November 26, 2012), 55 (December 5, 2012), 72

7    (March 21, 2013)).  Plaintiff's Counsel received significant, additional discovery

8    as a result of these motions, which related to issues including electronically

9    stored information ("ESI") custodians and keywords, the relevant time period for

10   discovery, appropriate deponents, and financial and sales data.  Additionally,

11   Defendant moved to compel additional discovery from Plaintiff.  (D.E. No. 40).

12   **2.    Expert  and  Third  Party  Discovery,  and  Related**
13        **International Discovery Motion Practice**

14       Plaintiff's Counsel also conducted substantial discovery of relevant third-

15   parties and Defendant's experts.  In total, Plaintiff's Counsel served subpoenas

16   for documents on approximately 17 third-parties.  Blood Decl., ¶14.  These third-

17   parties included marketing and public relations companies hired by FitFlop, over

18   11 retailers who sold FitFlop Footwear, the American Podiatric Medical

19   Association, the QVC television network, and one of Defendant's former

20   executives.  As a result of these substantial discovery efforts, third-parties

21   provided Plaintiff with more than 16,500 documents that were subsequently

22   analyzed.  *Id.*  Moreover, on November 12-13, 2012, in Manchester, England,

23   Class Counsel took the depositions of two of the primary outside researchers that

24   conducted scientific studies regarding FitFlop Footwear.  *Id.*, ¶13.

25       On November 26, 2012, Plaintiff filed a motion for application for

26   issuance of a letter of request to conduct foreign discovery of seven individuals

27   pursuant to the United Kingdom Evidence (Proceedings in Other Jurisdictions)

28   Act of 1975 (the "Evidence Act").  (D.E. No. 53).  Although FitFlop USA is

BLOOD HURST & O'REARDON, LLP

00066396

headquartered in the United States, its parent company and many relevant employees are in England. Additionally, scientists who conducted the studies upon which FitFlop relies for its advertising substantiation (and who FitFlop designated as litigation experts) are located abroad. Class Counsel also retained local counsel in London. Blood Decl., ¶20.

On January 7, 2013, the Parties exchanged expert disclosures. Plaintiff retained experts opining on issues relating to the scientific basis and support for FitFlop's advertising statements, appropriate monetary relief, and the marketing and advertising of FitFlop Footwear. *Id.*, ¶8.

## D.   Settlement Negotiations

The Parties engaged in numerous, arm's-length mediation sessions. On April 17, 2012, the Parties had an early neutral evaluation conference with the Hon. Karen S. Crawford. The Action did not settle. Thereafter, on October 9, 2012, the Parties held their first formal mediation session with Martin Quinn, Esq. of JAMS San Francisco. Blood Decl., ¶24. In advance of the first mediation session, the Parties had engaged in substantial discovery and motion practice. This first mediation was unsuccessful, and was followed by class certification briefing, depositions, and additional discovery from Defendant and non-parties. On June 19, 2013, the Parties held a second formal mediation session with mediator Martin Quinn. The Action did not settle at the second mediation. *Id.* That last formal mediation session was followed by numerous telephonic conferences until a tentative settlement was reached at the end of July 2013. *Id.* Over the past several months, the Parties have exchanged numerous drafts of settlement documents and negotiated the terms of the agreement memorializing the Settlement.

Every aspect of this Settlement was heavily negotiated, including the overall dollar amount of the Settlement and each aspect of the Settlement Agreement and exhibits, including the amounts available to individual Class

BLOOD HURST & O'REARDON, LLP

Members making claims, as well as details surrounding the claims process. Blood Decl., ¶25.  Class Counsel have determined that a settlement of the Action on the terms reflected in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiff and the Class.

## III.   SETTLEMENT TERMS

The Settlement Agreement, filed concurrently with this motion, contains the complete terms of the settlement, which are summarized below.

### A.   The Settlement Class

The Stipulation defines a national Settlement Class under Rule 23(b)(3) composed of all persons who purchased FitFlop Footwear in the United States from January 1, 2007, to the date Class Notice is first disseminated to the Class. *See* Stipulation, at §II, ¶¶10, 12.

### B.   Relief to Class Members

#### 1.   Injunctive Relief

For a period of five years from the Effective Date of the Settlement, FitFlop will not make the alleged false and deceptive representations, including that FitFlop Footwear is effective in strengthening, toning, burning calories, or assisting in weight loss unless, at the time of making such representation, it possesses and relies upon competent and reliable scientific evidence that substantiates that the representations are true and non-misleading. *See* Stipulation, at §IV(B)(2).

#### 2.   Monetary Relief

FitFlop will create a Settlement Fund of $5.3 million to provide monetary relief to Class Members for their purchases of the FitFlop Footwear.  To obtain a cash payment for up to two pairs of FitFlop Footwear, Class Members need only fill out and return a simple Claim Form.  The Claim Form can be viewed and submitted all online through the Settlement Website, or it can be mailed in.  No additional proof of purchase is required.  Class Members who submit proof of

purchase may receive cash payment for each of their purchases. Class Members will receive the following relief based on the particular FitFlop Footwear they purchased, the number of FitFlop Footwear purchased and the number of Class Members that submit Eligible Claims:

| Eligible Footwear | Initial Amount | Maximum Amount |
|---|---|---|
| Ex. 8, Category 1 | $25 | $60 |
| Ex. 8, Category 2 | $40 | $100 |

*See* Stipulation, at §IV(A)(2). Exhibit 8 to the Stipulation, which is a list of the Eligible FitFlop Footwear fitting Categories 1 and 2, is prominently posted on the Settlement Website, attached to the Class Notice, and referenced in the Claim Form.

If the total amount of eligible and approved claims submitted by Class Members is less than the available relief, each Class Members' award will be increased on a *pro rata* basis, with a potential maximum increase of more than double the initial amount, as reflected above. These maximum amounts represent the approximate average retail price Class Members would have paid for the FitFlop Footwear. That is, the average suggested retail price for the FitFlop Footwear listed in Schedules A and B is approximately $60 and $100, respectively. This amount represents full compensation to Class Members as measured by the most optimistic measure of damages. Similarly, the initial amounts provided to Class Members generally exceeds the likely alternative measure of damages – the difference between the purchase price for the FitFlop Footwear as represented and the value of the product received, if the product received is compared to regular "non-toning" footwear.

None of the $5.3 million Settlement Fund will revert to FitFlop. If any amounts remain in the $5.3 million Settlement Fund (after payment of all Notice

BLOOD HURST & O'REARDON, LLP

1   and Claim Administration Expenses, necessary taxes and tax expenses,

2   Attorneys' Fees and Expenses and Eligible Claims), including after the upward

3   adjustments of Eligible Claims, the amount remaining in the Settlement Fund

4   will be distributed pursuant to the *cy pres* doctrine to Consumers Union of the

5   United States, Inc. and Consumer Watchdog in equal amounts. *See* Stipulation,

6   at §IV(C)(3)(c). Consumers Union is an appropriate nonprofit, civic entity,

7   engaged in the publication of "Consumer Reports" and actively promoting and

8   lobbying for consumers' rights, and especially in the conduct of fair, transparent

9   and accurate advertising. *See* concurrently filed Declaration by Elisa

10  Odabashian, Consumers Union of United States, Inc., ¶2. Consumer Watchdog

11  is also an appropriate nonprofit, civic entity, which, through policy research,

12  investigation, public education, and advocacy (including litigation), fights to

13  expose, confront, and change deceptive corporate practices. *See* concurrently

14  filed Declaration of Jamie Court in Support of *Cy Pres* Designation of Consumer

15  Watchdog, ¶2.

16      *Cy pres* distributions are appropriate where proof of individual claims is

17  burdensome or distribution of damages costly or where there are unclaimed

18  funds. *Six (6) Mexican American Workers v. Arizona Citrus Growers*, 904 F.2d

19  1301, 1305 (9th Cir. 1990). A *cy pres* award must be "guided by (1) the

20  objectives of the underlying statute(s) and (2) the interests of the silent class

21  members;" and (3) ... must not benefit a group "too remote from the plaintiff

22  class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *see also Six*

23  *(6) Mexican American Workers*, 904 F.2d at 1308. In other words, a court

24  "should not find the settlement fair, adequate and reasonable unless the *cy pres*

25  remedy 'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the

26  underlying statutes, and the interests of the silent class members.'" *Lane v.*

27  *Facebook*, 696 F.3d 811, 819-820 (9th Cir. 2012) (*quoting Nachshin*, 663 F.3d at

28  1036).

BLOOD HURST & O'REARDON, LLP

MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8

BLOOD HURST & O'REARDON, LLP

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, unclaimed funds are to be distributed to Consumers Union and Consumer Watchdog for the purpose of protecting consumers nationwide by combatting deceptive marketing and advertising practices, and working with regulators, policymakers and consumer protection agencies to improve laws and regulations to better protect consumers from deceptive corporate conduct, including false advertising. The *cy pres* award is not limited by geography and the purpose of the *cy pres* award is directly connected to Plaintiff's allegations concerning false and deceptive advertising.

> **3.** **Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Service Awards**

All Notice and Claims Administration Expenses (expected to be approximately $600,000), attorneys' fees and expenses, and plaintiff service awards will be paid from the Settlement Fund. *See* Stipulation, at §§IV(C)(6), X(A), X(C). FitFlop agrees to not oppose Class Counsel's application for reasonable attorneys' fees not to exceed $1,325,000 plus reimbursement of out-of-pocket expenses (approximately $180,000 to date). FitFlop also agrees not to oppose any request for Court-awarded service awards of $5,000 to Plaintiff Arnold, and $1,500 to Angie Ojeda and Barbara Glaberson. *See* Stipulation, at § X(C). If any portion of the agreed-upon Plaintiffs' counsel's attorneys' fees and expenses is not awarded by the Court, then such amount will remain in the Settlement Fund, and will not revert to FitFlop. *Id.* at §IV(C)(3)(c).

**C.** **The Class Notice Plan**

The Parties have developed a Notice Plan with the help of Garden City Group, Inc., a firm that specializes in developing class action notice plans. Details regarding the Class Notice Plan are attached to the Stipulation as Exhibit 6.

At the center of the Class Notice Plan is the website specifically set up for this Settlement ("Settlement Website"). The address of the Settlement Website,

www.FitFlopSettlement.com (a web address ideally suited for this Action), will appear on all of the notice pieces, and will be hyper-linked where a notice piece appears on the Internet.   The short and simple online Claim Form can be completed from and submitted at the Settlement Website.   The Settlement Website will also provide information about the Settlement, including the Class Notice.

The vast majority of FitFlop Footwear was sold at retail stores.   Thus, FitFlop does not have mailing addresses for these Class Members.   Therefore, the Class Notice Plan focuses primarily on publicizing the Settlement through the Publication Notice in targeted periodicals and hyper-linked "banner advertisements" across numerous Internet sites.   The Publication Notice and banner advertisements will appear in various sources chosen based on marketing research on the demographics of consumers who purchase FitFlop Footwear, as well as sources where FitFlop itself advertised.

The Publication Notice is designed to provide potential Class Members with information regarding the Settlement and inform them about their rights. The Publication Notice contains a general description of the Action, the Settlement relief, including how a claim can be filed, and a general description of Class Members' legal rights.   The Publication Notice also directs Class Members to the Settlement Website and a toll free number Class Members may use to obtain a copy of the detailed Class Notice, Claim Form, and other information. The Publication Notice, which will be distributed nationwide in People magazine (a publication utilized by FitFlop for advertising the FitFlop Footwear, and which has a total readership exceeding 40 million) is attached to the Stipulation of Settlement as Exhibit 5.   Banners ads (discussed below) will also appear on People's Internet website.

The Settlement will also be publicized through the use of Internet "banner ads."   Banner ads are short, Internet-based advertisements designed to attract

MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00066396

BLOOD HURST & O'REARDON, LLP

attention.  When presented with such an ad, an interested Internet user need only click on the banner ad and immediately will be taken to the Settlement Website. Internet banner ads will be posted on the following families of sites for a period of time to deliver approximately 180,000,000 impressions: Facebook, MSN Living, Microsoft Media Network (targeted to active lifestyle and fitness enthusiasts),[3] Real Media Group (health and fitness channel),[4] approximately 100 Gannett News websites nationwide,[5] People.com, and Prevention.com.[6]  *See* Stipulation, Ex. 6.  This is particularly helpful because the vast majority of the targeted audience is online and most of them are medium to heavy users of the Internet.  The banner ad for this Settlement will substantially appear as follows:



Accompanying the Publication Notice and Internet banner advertisements is a customized press release in the form of the Publication Notice that will be distributed over PR Newswire's National U.S.1 and Hispanic newslines, as well as social networking posts to sites including Twitter, LinkedIn and Facebook.  *Id.*

Further, to capture the growing population of cell phone users (who fall squarely into the target audience), mobile banner advertising, similar to Internet banner advertising, will be served to those accessing the Internet through their

---

[3]     The Microsoft Media Network websites include fitness.com, fitnessmagazine.com, muscleandfitness.com, weightwatchers.com, menshealth.com, mensfitness.com, shape.com, and womens-health.com.
[4]     The Real Media Group (Health & Fitness Channel) websites include active.com, health.com, healthgrades.com, womenhealthzone.com, and healthnewsdaily.com.
[5]     Gannett news websites include local television network affiliates across the country, including in Atlanta, Buffalo, Cleveland, Denver, Jacksonville, Little Rock, Minneapolis-St. Paul, Phoenix, Sacramento, St. Louis, Tampa, and Washington, D.C.
[6]     Prevention, an American healthy lifestyle magazine, is one of the largest magazines in the world with a 2.8 million circulation and over 10 million readers a month.

00066396

cell phone.  *See* Stipulation, Ex. 6.  These mobile phone users will see the banner and, if they choose, can click to seek additional information and/or to call the toll free line.  This effort will further increase the opportunity for potential Class Members to participate in the Settlement.

Complementing the Publication Notice is the Full Notice.  The Full Notice contains detailed information about the Action, the Settlement benefits, the release and how to opt-out, object and exercise other rights under the Settlement.  The Full Notice is attached to the Stipulation of Settlement as Exhibit 4.  The Full Notice will be available through the Settlement Website established for this case and will be mailed or emailed to callers at their request.  *See* Stipulation, at §§V(B), VI(A)(1), VII(B)(2).  The lists of Eligible Footwear (Stipulation Ex. 8) will be affixed to the end of the Full Notice.

Finally, the Publication Notice also provides instructions in Spanish directing Class Members to the Settlement Website for additional information in Spanish.  *See* Stipulation, at Exhibit 5 (Publication Notice states at top, "*Para información en español, visite la página web, www.FitFlopSettlement.com*").  Spanish speakers may speak with live, Spanish-speaking operators by dialing the toll-free number.  The Settlement Website will also contain a unique feature permitting Class Members to view the Settlement Website in Spanish through Google Translate.

## IV.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

Settlements of class actions are strongly favored.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also Churchill Village, LLC v. Gen. Elec. Co*., 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  By their very nature, because of the uncertainties of outcome, difficulties

BLOOD HURST & O'REARDON, LLP

of proof, and lengthy duration, class actions readily lend themselves to compromise. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits…which frequently present serious problems of management and expense"). Moreover, the Court should give a presumption of fairness to arm's-length settlements reached by experienced counsel. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"). Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

On preliminary approval, the court does not make a full and final determination regarding fairness. "Because class members will subsequently receive notice and have an opportunity to be heard," the court "need not review the settlement in detail at this juncture." *In re ML. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9 (S.D. Cal. Apr. 13, 2009). "[I]nstead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *Id.* at *9-10 (quoting Newberg on Class Actions, §11.25 (4th ed. 16 2002)); *see also* Manual for Complex Litigation (4th ed. 2009) §§2l.632, 21.633. At this stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Stipulation of Settlement to determine whether notice should be sent to the settlement Class Members. *In re ML Stein,* 2009 U.S. Dist. LEXIS 31650, at *9-10. The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*,

BLOOD HURST & O'REARDON, LLP

00066396

688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This is a minimal threshold:

> [I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and *falls within the range of possible approval*, then the court should direct that the notice be given to the Class members of a formal fairness hearing . . . .

*Young v. Polo Retail, LLC*, No. C-02-4546 (VRW), 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) (emphasis added).

The Ninth Circuit has articulated six factors to use in evaluating the fairness of a class action settlement at the preliminary approval stage: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. *Jack v. Hartford Fire Ins. Co.*, No. 3:09-cv-1683 MMA (JMA), 2011 U.S. Dist. LEXIS 118764, at *11 (S.D. Cal. Oct. 13, 2011), citing *Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) (overruled in part on other grounds); *Hanlon*, 150 F.3d at 1026 (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement").

Here, the proposed settlement plainly satisfies the standard for preliminary approval, as there is no question as to its fairness, reasonableness and adequacy, placing it squarely within the range of possible approval.

### A. The Strengths of Plaintiff's Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Preliminary Approval

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van*

BLOOD HURST & O'REARDON, LLP

*Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).  This action is not unique in this regard – the Parties disagree about the merits, and there is substantial uncertainty about the ultimate outcome of this Action.

Assuming that litigation was to proceed, the hurdles that Plaintiff faces prior to certification and trial are substantial.  As a preliminary matter, FitFlop has argued that class certification should be denied because Plaintiff is not an adequate or typical class representative, that Plaintiff fails to meet standards recently articulated in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) for setting forth appropriate damages theories, and because common issues of fact would not predominate because necessary, individualized inquiries include (a) what advertising representation was made, and (b) whether the class member relied on the advertising representation.  (D.E. No. 87).

On the merits, FitFlop strongly contends that its claims regarding the effectiveness of FitFlop Footwear is backed by numerous studies and years of scientific research.  In addition, FitFlop disputes the appropriate measures of restitution or damages, and contends that the Class contains many satisfied, uninjured persons.  Moreover, FitFlop designated five experts to discuss the research and science supporting its health benefit claims for the FitFlop Footwear.

Given these considerations, preliminary approval of the Stipulation of Settlement is appropriate to avoid the uncertainties of continued litigation.

**B.    The Risk, Complexity, Expense, and Duration of the Litigation Favor Preliminary Approval**

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming.

MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

1    Here, the proposed Settlement specifically addresses the alleged deceptive
2    conduct by providing carefully-tailored economic benefits to all Class Members
3    who submit eligible claims.  The proposed Settlement is able to provide these
4    benefits without the risk and delays of continued litigation, trial and appeal.  The
5    expense, complexity and duration of litigation are significant factors considered
6    in evaluating the reasonableness of a settlement.  Litigating this class action
7    through trial would undoubtedly be time-consuming and expensive.  As with
8    most class actions, this Action is complex.  Indeed, FitFlop is a sophisticated
9    corporation with numerous employees who worked on the FitFlop Footwear,
10   including retaining third-parties to design and develop unique footwear products
11   and conduct scientific research regarding potential health benefits, and continued
12   litigation would require a significant number of additional depositions, the
13   majority of which would take place in Europe, including the depositions of two
14   researchers who initially developed the technology underlying FitFlop Footwear.
15   Plaintiff's Counsel was also faced with renewing the request for seven
16   depositions pursuant to the Evidence Act.  Question about the materiality and
17   scientific validity of the health benefits message conveyed by FitFlop's
18   advertisements and labeling is vigorously disputed by the Parties and would
19   require analysis by numerous experts for both Parties.  For example, Plaintiff
20   hired a marketing and consumer behavior expert to design and conduct a
21   consumer survey about the advertising at issue.  Plaintiff also hired a damages
22   expert to review voluminous financial data obtained from Defendant and third-
23   parties, and opine on the appropriate methodology and amount of damages for
24   Class Members' retail purchases.  At a minimum, absent settlement, litigation of
25   these issues would likely continue for a year or two before Plaintiff or the Class
26   would see any recovery.  That a settlement would eliminate the delay and
27   expenses strongly weighs in favor of approval.  *See Milstein v. Huck*, 600
28   F. Supp. 254, 267 (E.D.N.Y 1984).  This is particularly true in a case like this,

00066396

where Class Member addresses are not known, forcing Class Members to claim in to receive payment. The more time that goes by, the more difficult it is to both identify class members and cause them to participate in any resolution.

By reaching this Settlement, the Parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful benefits to Class Members. Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

## C.      The Substantial Relief Provided by the Settlement Agreement Favors Preliminary Approval

The Settlement Agreement provides real relief for the Class. Class Members who purchased FitFlop Footwear may submit Claims and receive cash reimbursements for all pairs of FitFlop Footwear purchased. Indeed, Class Member may submit claims for up to two product purchases without receipts or other proof of purchase. Thus, without proof of purchase, a Class Member may receive up to $200 cash.

Nevertheless, in evaluating the fairness of the consideration offered in settlement, it is not the role of the court to second-guess the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair:

BLOOD HURST & O'REARDON, LLP

00066396

"Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

### D. The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations

The Parties' arm's-length settlement negotiations and participation in numerous mediation sessions with Martin Quinn, Esq. further demonstrates the fairness of the Settlement that was reached, and that the Settlement is not a product of collusion. Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg*, §11.41; *see also In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *17 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, Counsel for FitFlop and Plaintiff each zealously negotiated on behalf of their clients' best interests. The Parties engaged in protracted negotiations with the assistance of Martin Quinn, an experienced and well-respected mediator with JAMS San Francisco. During these negotiations, Plaintiff and Class Counsel, who are experienced in prosecuting complex class action claims, had a "clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Moreover, the fact that the Settlement was negotiated over the course of several mediation sessions, in front of an experienced mediator, is one factor that demonstrates the Settlement was anything but collusive. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-

BLOOD HURST & O'REARDON, LLP

length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *In re M.L. Stern Overtime Litig.*, No. 07-cv-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *13 (S.D. Cal. April 13, 2009) (granting preliminary approval and stating that "the settlement was reached with the supervision and assistance of an experienced and well-respected independent mediator").  Further, the nature of the subsequent negotiations between the Parties, the experience of counsel as longstanding class action attorneys, and the fair result reached are illustrative of the arms-length negotiations that led to the Stipulation of Settlement.

**E.    The Settlement Agreement Is Fair to Plaintiff and Class Members**

The proposed Settlement is fair as to all Class Members in that it provides a minimum monetary recovery exceeding the alleged retail price premium and may potentially provide approximately 100% recovery of the retail purchase price, and through the injunctive relief component, extinguishes the risk of repetition of the alleged offensive actions.  Plaintiff and Class Members may submit claims (online or through the mail) for up to two of their purchases, using a simple Claim Form that does not require receipts or other proof of purchase. Class Members who purchased more than two pairs of FitFlop Footwear may submit proof of purchase directly online through the Settlement Website. Further, Plaintiff Charlice Arnold, the other person who stepped forward during litigation as a proposed plaintiff and class representative, Angie Ojeda, and the named plaintiff from the related class action pending in New Jersey, Barbara Glaberson, do not receive any unduly preferential treatment under the Settlement. With the exception of a modest service award – $5,000 to Plaintiff Arnold, and $1,500 each to Angie Ojeda and Barbara Glaberson – to account for their willingness to step forward and represent other consumers, and to compensate them for their time and effort devoted to prosecuting the common claims,

BLOOD HURST & O'REARDON, LLP

00066396

Plaintiff and the two Other Plaintiffs are treated the same as every other Class Member. Such service awards are "fairly typical in class action cases." *Rodriguez,* 563 F.3d at 958; *see also In re Simon v. Toshiba America,* No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501, at *12-13 (N.D. Cal. Apr. 30, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *10 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for himself which is not available to other class members, the fee appears to be reasonable in light of [plaintiff's] efforts on behalf of the class members."); *In re M.L. Stern Overtime Litig.*, No. 07-cv-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 94671, at *11 (S.D. Cal. October 9, 2009) (granting final approval and awarding class representative class enhancement awards of $15,000 per class representative).

## V.   THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement and the class members' rights to opt out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. In this Circuit, it has long been the case that a notice of settlement will be adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill*, 361 F.3d at 575); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery). The notice should also present

BLOOD HURST & O'REARDON, LLP

1   information "neutrally, simply, and understandably," including "describ[ing] the

2   aggregate amount of the settlement fund and the plan for allocation."   *Rodriguez*,

3   563 F.3d at 962.

4        The proposed Notices more than satisfy these requirements.   The Parties

5   have negotiated and drafted a Class Notice, which is written in simple

6   terminology and includes: (1) basic information about the lawsuit; (2) a

7   description of the benefits provided by the Settlement; (3) an explanation of how

8   Class Members can obtain Settlement benefits; (4) an explanation of how Class

9   Members can exercise their right to opt-out or object to the Settlement; (5) an

10   explanation that any claims against FitFlop that could have been litigated in this

11   action will be released if the Class Member does not opt out from the Settlement;

12   (6) the names of counsel for the Class and information regarding attorneys' fees,

13   expenses, and service awards; (7) the fairness hearing date; (8) an explanation of

14   eligibility for appearing at the fairness hearing; and (9) the Settlement Website

15   address and a toll free number where additional information can be obtained.

16        The contents of the proposed Class Notice are more than adequate, and

17   comply with the Federal Judicial Center's model class action notices.   *See*

18   www.fjc.gov; *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 11-2308, 2012

19   U.S. Dist. LEXIS 113641, at *46-47 (W.D. Ky.  Aug. 13, 2012) (approving class

20   notices that "comply with the Federal Judicial Center's illustrative class action

21   notices").   The Notice provides Class Members with sufficient information to

22   make an informed and intelligent decision whether to object to the Settlement.

23   As such, it satisfies the content requirements of Rule 23.   *See In re Compact*

24   *Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me.

25   2003) ("notice must describe fairly, accurately and neutrally the claims and

26   parties in the litigation . . . entitled to participate, including the right to exclude

27   themselves from the class."); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669

28   F.3d 1005 (9th Cir. 2012) (enforcing judgment and settlement agreement in prior

BLOOD HURST & O'REARDON, LLP

related action against plaintiff did not violate plaintiff's due process rights where plaintiff was a party to the prior suit and was provided full notice of the release and covenant not to sue provisions of the settlement agreement and rejected opt out opportunity).

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements.  The Settlement provides that FitFlop will provide notice to the Class after preliminary approval of the Settlement by the Court. These are small dollar, over-the-counter retail purchases, and there is no way to reasonably identify the vast majority of individual Class Members.  Therefore, the Notice Program consists of publishing the Publication Notice in sources specifically targeting Class Members, including sources utilized by FitFlop for advertising the FitFlop Footwear.  Additionally, Class Notice will be available through the Settlement Website specifically established for this Action.

In sum, the contents and dissemination of the proposed Class Notice constitutes the best notice practicable under the circumstances and fully complies with the requirements of Rule 23.

## VI.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Ninth Circuit recognizes the propriety of certifying a settlement Class to resolve consumer lawsuits.  *See Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.  *Id*.  However, where a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered.  *See Wright v. Linkus Enterps., Inc.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire

BLOOD HURST & O'REARDON, LLP

MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

00066396

1   whether the case, if tried, would present intractable management problems . . .

2   for the proposal is that there be no trial.")).  Here, the conditional certification of

3   the Class is appropriate for purposes of settlement because all the requirements

4   of Rule 23 have been met.

### A.    The Class Satisfies Federal Rule of Civil Procedure 23(a)

6   Rule 23(a) enumerates four prerequisites for class certification, referred to

7   as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  In light of

8   the settlement, the Parties agree that each of these requirements is met.

### 1.    Numerosity

10   Rule 23(a)(1) requires that "the class is so numerous that joinder of all

11   members is impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc*.,

12   255 F.R.D. 658, 664 (C.D. Cal. 2009).  Here, the numerosity requirement is

13   readily met because it is difficult or inconvenient to join all members of the

14   proposed Class.  *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.

15   1982), vacated on other grounds, 459 U.S. 810 (1982).  Here, FitFlop sold the

16   FitFlop Footwear nationwide over several years at major retailers including

17   Nordstrom, Macy's, Amazon.com, and Zappos during the Class Period.

18   Accordingly, the numerosity requirement is satisfied.

### 2.    Commonality

20   "Commonality requires the plaintiff to demonstrate that the class members

21   have suffered the same injury . . . Their claims must depend upon a common

22   contention . . . That common contention, moreover, must be of such a nature that

23   it is capable of class-wide resolution – which means that determination of its

24   truth or falsity will resolve an issue that is central to the validity of each one of

25   the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

26   (2011) (internal citation omitted).  Still, "[t]he existence of shared legal issues

27   with divergent factual predicates is sufficient [to satisfy commonality], as is a

28   common core of salient facts coupled with disparate legal remedies within the

BLOOD HURST & O'REARDON, LLP

class." *Hanlon*, 150 F.3d at 1019; *In re First Alliance Mortg. Co*., 471 F.3d 977, 990-91 (9th Cir. 2006).   The commonality requirement is construed "permissively."   *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.   This prerequisite is readily met in this case.   To quote *Wiener*:   "The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products."   255 F.R.D. at 664-65; *see also Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 287 (C.D. Cal. 2011) (plaintiff's claims presented common, core issues of law and fact, including "whether General Mills communicated a representation [] that YoPlus promoted digestive health" and "whether YoPlus does confer a digestive health benefit that ordinary yogurt does not").   Here, as well, the core issue for each Class Member's claim is whether FitFlop Footwear provides the toning and strengthening health benefits promised in the advertising and labeling.  (D.E. No. 76-1 at 2-12).   Representative examples of the packaging and labeling for FitFlop Footwear, which demonstrate this common message, were submitted in connection with Plaintiff's motion for class certification. (D.E. No. 76-2 at Exs. 6, 8-9).

### 3.   Typicality

Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665.   The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).   Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id*.   For example, in *Keilholtz v. Lennox Health Prods., Inc.*, 268

F.R.D. 330 (N.D. Cal. 2010), in certifying UCL and CLRA claims, the court found that the typicality requirement was satisfied because "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings." *Id.* at 338.

Typicality is met here as Plaintiff and the proposed Class assert the same claims, arising from the same course of conduct – FitFlop's uniform, deceptive marketing campaign. All of the labeling and advertising at issue misrepresented the efficacy and core characteristics of FitFlop Footwear, *i.e.* that it would provide strengthening and toning benefits. Plaintiff, like every Class member, was injured when she paid money to purchase FitFlop Footwear. Under the claims alleged, Plaintiff and Class Members also seek the same relief for the same alleged wrongful conduct, *i.e.*, misrepresenting the health benefits of FitFlop Footwear. Plaintiff's claims are the same as those of other Class Members. Therefore, the typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In the Ninth Circuit, adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Molski v. Gleich*, 318 F.3d at 955, *overruled on other grounds in Dukes v. Wal Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Wiener*, 255 F.R.D. at 667.

For purposes of the Settlement, the Parties agree that adequacy has also been met in this case. First, the proposed Class Counsel are qualified and experienced in class action litigation. *See* Blood Decl., Exs. A (Blood Hurst & O'Reardon, LLP Firm Resume) and B (Wolf Haldenstein Adler Freeman & Herz LLP Firm Resume). Further, Plaintiff's Counsel have performed extensive work

BLOOD HURST & O'REARDON, LLP

to date in identifying and investigating potential claims in this Action, evaluating existing scientific research and acquiring data through discovery from FitFlop and numerous third parties, to develop a detailed understanding of the scientific testing of FitFlop Footwear and its incorporated technology, as well as the scientific research methodologies and bases for claims relating to biomechanics, gait, and strength testing. *See* Blood Decl., ¶¶ 4, 8, 10.  The net result of such research and effort, including with the assistance of a retained expert in the field of biomechanical effects of footwear, were represented in a detailed class action complaint, in-depth class certification briefing, and in successfully negotiating the proposed Settlement. *See In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself").  Second, the interests of Plaintiff and Class Members are fully aligned and conflict free: Plaintiff and Class Members are seeking redress from what is essentially the same injury and there are no disabling conflicts of interest.

## B.   The Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3)

Plaintiff seeks certification of a Settlement Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777 (2d ed. 1986)).  There are two fundamental conditions to certification under Rule 23(b)(3):   (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

1    *Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022;

2    *Wiener*, 255 F.R.D. at 668.  As such, Rule 23(b)(3) encompasses those cases "in

3    which a class action would achieve economies of time, effort, and expense, and

4    promote . . . uniformity of decision as to persons similarly situated, without

5    sacrificing procedural fairness or bringing about other undesirable results."

6    *Amchem*, 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668.

7                    **1.    Common Questions Predominate**

8            The Rule 23(b)(3) predominance inquiry "tests whether proposed classes

9    are sufficiently cohesive to warrant adjudication by representation."  *Amchem*,

10   521 U.S. at 623; *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011).

11   "Predominance is a test readily met in certain cases alleging consumer . . . fraud .

12   . . ."  *Amchem*, 521 U.S. at 625.  "When common questions present a significant

13   aspect of the case and they can be resolved for all members of the class in a

14   single adjudication, there is clear justification for handling the dispute on a

15   representative rather than on an individual basis."  *Fed. Prac. & Proc.*, §1778;

16   *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that

17   commonality and typicality tend to merge).

18           The predominance requirement is satisfied here.  As discussed above,

19   Plaintiff alleges that the Class Members are entitled to the same legal remedies

20   premised on the same alleged wrongdoing.  The central issue for every claimant

21   is whether FitFlop's claim that FitFlop Footwear, with its "Microwobbleboard

22   Technology," did in fact provide toning and strengthening benefits and whether

23   that misrepresentation was false or deceptive to a reasonable consumer.  *See*

24   *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("the predominating

25   common issues include whether Bayer misrepresented that the Men's Vitamins

26   'support prostate health' and whether the misrepresentations were likely to

27   deceive a reasonable consumer.").  These issues predominate and are together the

28   "heart of the litigation" because they would be decided in every trial brought by

BLOOD HURST & O'REARDON, LLP

individual Class Members and can be proven or disproven with the same Class-wide evidence.  Under these circumstances, predominance under Rule 23(b)(3) is satisfied.  *Hartless*, 273 F.R.D. at 638-39 (predominance established where all class members were exposed to the same alleged misrepresentations); *Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package).

### 2.    A Class Action is the Superior Method to Settle this Controversy

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  These factors include:  (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."  *Zinser*, 253 F.3d at 1190 (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this settlement.  The damages at issue for each Class Member are not large.  *Zinser*, 253 F.3d at 1191; *Wiener* 255 F.R.D. at 671.  It is neither economically feasible, nor judicially efficient, for Class

MEMORANDUM ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

1  Members to pursue their claims against FitFlop on an individual basis. *Hanlon*,

2  150 F.3d at 1023; *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39

3  (1980); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971); *Amchem*, 521 U.S.

4  at 617 ("The policy at the very core of the class action mechanism is to overcome

5  the problem that small recoveries do not provide the incentive for any individual

6  to bring a solo action prosecuting his or her rights"). Additionally, the fact of

7  settlement eliminates any potential difficulties in managing the trial of this

8  Action as a class action. *See Amchem*, 521 U.S. at 620 (when "confronted with a

9  request for settlement-only class certification, a district court need not inquire

10 whether the case, if tried, would present intractable management problems . . .

11 for the proposal is that there be no trial"). As such, under the circumstances

12 presented here, a class action is clearly superior to any other mechanism for

13 adjudicating the case. The requirements of Rule 23(b)(3) are satisfied.

14 **VII.  PLAINTIFF SHOULD BE APPOINTED CLASS REPRESENTATIVE AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE CLASS**

15

16 The Parties also requests that the Court designate Plaintiff Charlice Arnold

17 as Class Representative for the Class. As discussed above, Plaintiff will fairly

18 and adequately protect the interests of the Class.

19 Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to

20 represent the interests of the Class. *See In re Rubber Chems. Antitrust Litig.*, 232

21 F.R.D. 346, 355 (N.D. Cal. 2005). The Parties respectfully request that Blood

22 Hurst & O'Reardon, LLP ("BHO") and Wolf Haldenstein Adler Freeman & Herz

23 LLP ("Wolf Haldenstein") be appointed Class Counsel for the Class. As set

24 forth above, BHO and Wolf Haldenstein are experienced and well equipped to

25 vigorously, competently and efficiently represent the proposed Class. *See also*

26 Blood Decl., Exs. A-B. Accordingly, the Court should appoint Timothy G.

27 Blood of BHO and Janine L. Pollack of Wolf Haldenstein as Class Counsel for

28 the Class.

## VIII.  THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates, such as the time to complete publication of the Short-form Notice or to opt-out or object, are based on when preliminary approval of the Settlement is granted and the Final Approval Hearing date.  The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| Event | Date |
|-------|------|
| Notice dissemination to the Class begins | Within twenty (20) days after entry of the Preliminary Approval Order |
| Notice dissemination substantially completed | Within sixty (60) days  after entry of the Preliminary Approval Order |
| Last day for exclusions or objections to the Settlement | No later than thirty (30) days before the date first set for the Final Approval Hearing |
| Parties to file briefs in support of final approval and in response to objections | No later than forty-five (45) days before the  Final Approval  Hearing |
| Parties to file supplemental briefs in support of final approval and in response to objections. | No later than seven (7) days prior to the Final Approval  Hearing |
| First day  Final Approval Hearing can be set | No earlier than 120 days after entry of Preliminary Approval Order |

Accordingly, the Parties request that the Court schedule the Final Approval Hearing 120 days after entry of its order granting preliminary approval, or as soon thereafter as the Court's schedule permits.

## IX.   CONCLUSION

For the reasons set forth above, the Parties respectfully request the Court: (1) conditionally certify the Class; (2) appoint Plaintiff Charlice Arnold as Class Representative for the Class; (3) appoint Timothy G. Blood of BHO and Janine L. Pollack of Wolf Haldenstein as Class Counsel for the Class; (4) grant

BLOOD HURST & O'REARDON, LLP

00066396

1  preliminary approval of the Settlement; (5) approve the proposed Class Notice

2  Plan; and (6) schedule a final approval hearing for the Settlement.

3

4  Dated:  December 13, 2013         BLOOD HURST & O'REARDON, LLP
                                    TIMOTHY G. BLOOD (149343)
5                                   LESLIE E. HURST (178432)
                                    THOMAS J. O'REARDON II (247952)
6

7                                   By:      s/ Timothy G. Blood
                                          TIMOTHY G. BLOOD
8
                                    701 B Street, Suite 1700
9                                   San Diego, CA  92101
                                    Telephone: 619/338-1100
10                                  619/338-1101 (fax)
                                    tblood@bholaw.com
11                                  lhurst@bholaw.com
                                    toreardon@bholaw.com
12
                                    WOLF HALDENSTEIN ADLER FREEMAN
13                                      & HERZ, LLP
                                    JANINE L. POLLACK (*pro hac vice*)
14                                  MICHAEL LISKOW (243899)
                                    270 Madison Avenue, 10th Floor
15                                  New York, New York 10116
                                    Telephone:  (212) 545-4600
16                                  Facsimile:   (212) 545-4762
                                    pollack@whafh.com
17                                  liskow@whafh.com

18                                  WOLF HALDENSTEIN ADLER FREEMAN
                                       & HERZ, LLP
19                                  FRANCIS M. GREGOREK (144785)
                                    BETSY C. MANIFOLD (182450)
20                                  RACHELE R. RICKERT (190634)
                                    MARIS C. LIVESAY (223247)
21                                  750 B Street, Suite 2770
                                    San Diego, CA  92101
22                                  Telephone:  619/239-4599
                                    619/234-4599 (fax)
23                                  gregorek@whafh.com
                                    manifold@whafh.com
24                                  rickert@whafh.com
                                    livesay@whafh.com
25
                                    BONNETT, FAIRBOURN, FRIEDMAN
26                                      & BALINT, P.C.
                                    ELAINE A. RYAN
27                                  PATRICIA N. SYVERSON (CA 203111)
                                    2325 E. Camelback Road, Suite 300
28                                  Phoenix, AZ  85016

BLOOD HURST & O'REARDON, LLP

00066396

Telephone:  602/274-1100
602/798-5860 (fax)
eryan@bffb.com
psyverson@bffb.com

SHEPHERD FINKELMAN MILLER
    & SHAH LLP
JAMES C. SHAH
35 East State Street
Media, PA 19063
Telephone: 610/891-9880
610/891-9883 (fax)
jshah@sfmslaw.com

EDGAR LAW FIRM, LLC
JOHN F. EDGAR
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: 816/531-0033
816/531-3322 (fax)
jfe@edgarlawfirm.com

POMERANTZ GROSSMAN HUFFORD
    DAHLSTROM & GROSS, LLP
JAYNE A. GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL  33326
Telephone: 954/315-3454
954/315-3455 (fax)
jagoldstein@pomlaw.com

*Attorneys for Plaintiff*

BLOOD HURST & O'REARDON, LLP

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on December 13, 2013, I electronically filed the

3 foregoing with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the e-mail addresses denoted on the Electronic Mail

5 Notice List.

6      Executed on December 13, 2013.

7

8                              *s/  Timothy G. Blood*
                              TIMOTHY G. BLOOD

9                         BLOOD HURST & O'REARDON, LLP
10                        701 B Street, Suite 1700
                          San Diego, CA  92101
11                        Telephone:  619/338-1100
                          619/338-1101 (fax)
12                        tblood@bholaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00066396