

1

2

3

4

5

6

7

8

9

10 UNITED STATES DISTRICT COURT

11 SOUTHERN DISTRICT OF CALIFORNIA

12

13 CHARLICE ARNOLD, on behalf of herself, all similarly situated and the general public,

14

15 Plaintiffs,

16 v.

17

18 FITFLOP USA, LLC,

19 Defendant.

CASE NO. 11-CV-0973 W (KSC)

ORDER GRANTING FINAL APPROVAL FOR CLASS ACTION SETTLEMENT [DOC.107]

[Fairness Hearing: April 28, 2014 at 10:30 a.m.]

20  Pending before the Court is the parties' joint motion for final approval of a

21 proposed class action settlement.  There has been one objection to the settlement filed

22 by Michael Narkin.

23  Having considered the papers submitted in support of the motion, Mr. Narkin's

24 objection, and the arguments at the hearing held on Monday, April 28, 2014, the Court

25 GRANTS the motion for the following reasons.

26 //

27 //

28 //

## I.    BACKGROUND

Defendant Fitflop USA, LLC ("Fitflop") manufactures, markets, and sells a line of women's and men's sandals, known as FitFlop Footwear. (*Second Amended Complaint* ("SAC") ¶¶ 3, 11 [Doc. 97].) According to the Second Amended Complaint, since 2007, Defendant has claimed in its advertising and on product packaging labels that  FitFlop Footwear provides a variety of health benefits including improved posture, increased muscle activation and toning, and reduced joint strain. (*Id.*  ¶¶ 3, 17-19, 21-31.) Defendant claims that these health benefits are the result of FitFlop Footwear's patent pending "Microwobbleboard Technology" midsole. (*Id.*)  Because of these claimed benefits, Fitflop Footwear is sold at a premium price. (*Id.*).

Plaintiffs assert that Defendant's health benefit claims are deceptive, and that FitFlop Footwear is not proven to provide any of the claimed benefits. (SAC ¶¶ 3, 32-46.) Plaintiffs contend that consumers have purchased FitFlop Footwear at a significant price premium over other comparable traditional footwear products, and that they would not have purchased FitFlop Footwear if they knew the claimed health benefits were untrue. (*Id.* at ¶¶ 9-10.)

On May 4, 2011, Ariana Rosales filed this action against Defendant FitFlop Footwear alleging violations of California Business & Professions Code § 17200 *et seq.* ("UCL"), violations of California Civil Code § 1750 *et seq.*, the Consumer Legal Remedy Act ("CLRA"), and breach of express warranty.  The complaint asserted that Defendant's deceptive claims affect a broad class of individuals who have purchased FitFlop Footwear, and she brought this putative class action on behalf of herself and other class members. (*Compl.* [Doc. 1], ¶¶ 7–8.)

On July 15, 2011, a first amended complaint was filed, adding Plaintiff Charlice Arnold as a named plaintiff and damage claims related to Defendant's alleged CLRA violations. (*FAC* ¶ 74.)  Plaintiff Rosales, thereafter, withdrew as a named plaintiff.  On June 26, 2013, Plaintiff Arnold filed the operative second amended complaint, which

adds certain evidentiary allegations and clarifies that Arnold is not seeking recovery for personal injury on behalf of herself or the proposed class.

On or about August 16, 2013, the parties reached a tentative settlement agreement. The agreement was finalized on December 12, 2013 and the parties then filed for preliminary approval.  By order dated December 19, 2013, the Court preliminarily approved the proposed settlement and set a fairness hearing for April 28, 2014.  (*See Prelim. Approval Order* [Doc. 110], ¶¶ 5, 7.)  On April 28, 2014, the final approval hearing was held.

## II.   LEGAL STANDARD

A class action lawsuit cannot be compromised without court approval.  See Fed.R.Civ.P. 23(e).  The primary purpose of Rule 23(e) is to protect class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties.  Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 624 (9th Cir. 1982).  Consequently, courts must conduct a fairness hearing to determine whether to approve the class action settlement.  See, e.g., In re Mego Financial Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable."  Officers for Justice, 688 F.2d at 625; see also Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993).  The Court must balance several factors, which may include:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the settlement amount; (5) the extent to which discovery has been completed; (6) whether one of the parties is a governmental entity; (7) the experience and views of counsel and (8) the class members' reaction to the proposed settlement.

1  Torrisi, 8 F.3d at 1375; Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir.

2  1998).   Further, the court must examine each factor to survive appellate review.   See

3  Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,

4  390 U.S. 414, 434 (1968); Hanlon, 150 F.3d at 1026.  Finally, "the settlement may not be

5  the product of collusion among the negotiating parties." Mego, 213 F.3d at 458 (citing

6  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

7

8  **III.   DISCUSSION**

9  **A.   Class Certification**

10  As a preliminary matter, the parties have stipulated to settlement class certification.

11  According to the proposed settlement, "Class" or "Class Member" means "all persons or

12  entities that, during the Class Period, purchased in the United States any Eligible

13  Footwear." (*Stipulation of Settlement* [Doc. 106], ¶ 10.)  Having read and considered the

14  papers submitted, the Court finds that the four Rule 23(a) requirements—numerosity,

15  commonality, typicality and adequacy of representation—have been met for settlement

16  class certification.

17  First, with respect to the numerosity requirement, based on the amount of FitFlop

18  Footwear sold, the Court finds that the numerosity requirement is easily met.[1]  See In

19  re Kirschner Medical Corp. Sec. Litig., 139 F.R.D. 60, 62 (D. Md. 1991) (noting that a

20  class of more than 25 to 30 members "raises the presumption that joinder would be

21  impracticable.").

22  Second, the questions of law and fact in this case are common to the entire class.

23  The Class Members' claims stem from the same salient issue: whether the FitFlop

24  Footwear provides the toning and strengthening health benefits promised in the

25  advertising and labeling.

26

27  _____

28  [1] Sales and revenue information regarding FitFlop Footwear was filed under seal in connection with Plaintiff's motion for class certification.  (*See Class Cert. Mt.* [Doc. 76-1], 15:18–25, Ex. 48 [Doc. 76-18].)

Third, the named Plaintiff's claims or defenses are typical of the Class's claims or defenses. Specifically, Plaintiff Arnold claims that she purchased Defendant's products to provide the strengthening and toning benefits. Plaintiff Arnold further claims that she purchased the product based on Defendant's misrepresentations. Thus, Plaintiff's claims are typical of the claims of other purchasers of FitFlop Footwear.

Finally, Plaintiff Arnold has fairly and adequately protected the interests of the Class by negotiating a settlement sufficient to compensate the members for their injury. Additionally, Plaintiff and Class Counsel do not have any interests antagonistic to the Class. Accordingly, the Court finds the proposed Class meets Rule 23(a)'s requirements, and hereby certify the Class for settlement purposes.

In addition to certifying a class, Rule 23(b)(3) requires the court to find that the common questions of law or fact predominate over any questions affecting only individual members, and a class action is the superior method for the fair and efficient adjudication of this controversy. Both factors are present in this case.

First, Plaintiff alleges that she and all Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing. Again, the central issue for all Class Members is whether Defendant's claim that FitFlop Footwear, with its "Mircrowobbleboard Technology," provided the strengthening and toning benefits, and whether that representation was false or deceptive to the reasonable consumer. This commonality and typicality ensures that individual Class Members do not need to prosecute separate actions.

Second, the Court also finds that class treatment is the superior means to adjudicate the claims. Based on the amount of damages per Class Member, the existence of the settlement fund, and the clear instructions provided to Class Members regarding how payments will be distributed, the Court anticipates no difficulties in managing this class action, particularly given that the action is in the settlement phase and no trial will occur.

11cv0973w

**B.    Notice to Class Members**

The next issue is notice to the Class.  The Ninth Circuit has summarized the Court's procedural obligations as follows:

> [T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice; the notice must indicate that a dissident can object to the settlement and to the definition of the class; each objection must be made a part of the record; those members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record; and objections without substance and which are frivolous require only a statement on the record of the reasons for so considering the objection.

Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (footnote and citations omitted)

Here, because FitFlop Footwear was primarily sold over the counter at retail stores, Defendant does not have contact information for most Class Members. Accordingly, the Class Notice Program was aimed at reaching as many Class Members as possible by publicizing the settlement through the Publication Notice in targeted periodicals and hyper-linked "banner advertisements" across numerous Internet sites.  Specifically, Publication Notice was published once in the February 3, 2014 issue of *People Magazine*, a general interest magazine with a circulation of approximately 3.5 million. (*Keough Dec.* [Doc. 114-9], ¶ 5.)  In addition, beginning January 13, 2014 and continuing through February 11, 2014, banner advertisements were also published on the internet sites of Facebook.com, Living.msn.com, People.com, and Prevention.com, as well as via the online newspaper networks of Microsoft Media Network on the Lifestyle & Fitness channel, Xaxis on the Health & Fitness channel, and Gannett Digital Media. (*Id.*, ¶ 6.) The banner advertisements allowed website visitors to self-identify themselves as potential Class Members and then click on a link that would take them to the Settlement Website. (*Id.*, ¶ 7.)  The banner-advertisement campaign delivered over 673 million impressions or opportunities for potential Class Members to click on the banner advertisement and view the Settlement Website.  (*Id.*)

1    Notice was also provided through mobile phone advertisements that ran for a four-
2    week period beginning on January 13, 2014, using MSN Mobile's Run of Site network.
3    (*Keough Dec.*, ¶ 8.)  Also, on January 13, 2014, a press release was distributed over PR
4    Newswire's *US1 Newsline* and *National Hispanic Newsline*, which announced the
5    settlement in English and Spanish to media outlets across the country.  (*Id.*, ¶ 9.)  The
6    press release was also delivered to a variety of PR Newswire's social network presences
7    including Twitter, LinkedIn, and Facebook.  (*Id.*)

8    Furthermore, on December 23, 2013, notice under the Class Action Fairness Act,
9    28 U.S.C. § 1715(b) ("CAFA Notice") was served to the Attorney General of the United
10   States, and to state Attorneys General.  (*Keough Dec.*, ¶ 4.)

11   On January 8, 2014, a settlement website was also set-up, which contains various
12   material relating to the Settlement, including the Stipulation of Settlement, and provides
13   additional information including an overview of the Settlement, important dates and
14   deadlines, and a list of answers to frequently asked questions.  (*Keough Dec.*, ¶ 10.)
15   Through the website, Class Members can also download a paper copy of the Claim Form
16   or submit a claim online.  (*Id.*)  Additionally, a toll-free telephone number was set-up on
17   January 8, 2014, to provide information regarding the settlement.  (*Id.* ¶ 11.)

18   The notice further notified Class Members that the final approval hearing would
19   be held on April 28, 2013 at 10:30 a.m., that the purpose of the hearing was to
20   determine whether the settlement should be approved, and that all objections were to
21   be filed with the Court by March 29, 2014.  (*Keough Dec.*, Ex. G at pp. 6–7.)

22   The Court finds that the notice provided to Class Members constitutes the best
23   notice practicable under the circumstances, is sufficient notice for all purposes to all
24   persons entitled to such notice, and fully complies with due-process requirements and
25   applicable law.

26   //
27   //
28   //

C.     Fairness Factors

        1.     The Strength of Plaintiffs' Case, and Risk, Expense, Complexity and Duration of Further Litigation.

The settlement represents a significant achievement in that it successfully resolves what has been a voluminous and complex lawsuit that the parties have been waging for nearly three years.  Although Plaintiffs believe they would have prevailed at trial, Defendant disputes that its advertising claims are deceptive, and designated five experts to discuss research and science supporting the health benefit claims.  Defendant also disputes the appropriate measures of restitution or damages, and asserts that the Class consists of many satisfied, uninjured persons.   Defendant further contends that the request for injunctive relief is moot.

Also, because most of the Defendants are British citizens and corporations, and none are publicly held corporations, Plaintiffs have acknowledged that, in the event they prevailed at trial, collecting the judgement could be a lengthy and time consuming process with no guarantee of success.

For these reasons, the benefits to the Class Members as a result of the settlement outweigh an uncertain result that would have taken several more years of litigation.  This factor, therefore, favors settlement.

        2.     The Risk of Maintaining Class Action Status.

While the parties agreed to class certification for purposes of this settlement, Defendant has vigorously opposed Plaintiff's class-certification motion.  Specifically, Defendant has argued that class certification should be denied because Plaintiff Arnold is not an adequate or typical class representative, that she fails to meet the standards set forth in Comcast Corp. v. Behrend, – U.S.–, 133 S.Ct. 1426 (2013), and because common issues of fact do not predominate.  Accordingly, this factor favors settlement.

//

//

### 3.     <u>Settlement Amount.</u>

The proposed settlement creates a $5.3 million non-reversionary Settlement Fund to provide monetary relief to Class Members for their purchases of FitFlop Footwear and pay for attorneys' fees and expenses, and notice and administration costs.  (*See Stip. of Settlement*, ¶ IV.A.1.)  The Settlement Fund was reached after the parties engaged in settlement discussions at the early neutral evaluation conference held before the Honorable Karen S. Crawford, and attended two private mediations with Martin Quinn of JAMS San Francisco on October 9, 2012 and June 19, 2013.

Following the parties' last mediation session, they continued to engage in numerous telephonic conferences until a tentative settlement was reached at the end of July 2013.  On August 16, 2013, the parties executed a detailed term sheet, whose terms are reflected in the Settlement Stipulation.  And unlike disfavored coupon settlements, the settlement provides cash recoveries for Class Members.  Additionally, if the Settlement Fund is not exhausted, the remainder will go to Consumers Union of the United States, a non-profit group dedicated to fighting false advertising, and Consumer Watchdog, a nonprofit civic entity that fights to expose, confront, and change deceptive corporate practices through policy research, investigation, public education, and advocacy.

Defendant has also agreed that for a period of five years from the settlement's Effective Date, it will not make the alleged false and deceptive representations, including that FitFlop Footwear is effective in strengthening, toning, burning calories, or assisting in weight loss unless, at the time of making such representation, it possesses and relies upon competent and reliable scientific evidence that substantiates the representations.( *See Stip. of Settlement*, ¶ IV.B.2.)

The Court also finds Plaintiff Arnold's request for a $5,000 service award is fair and reasonable given her participation in this litigation and the results achieved. Plaintiffs also requests a $1,500 service award to Barbara Glaberson and Angie Ojeda.

1    For the following reasons, the Court finds these service awards are also fair and
2    reasonable.

3         Barbara Glaberson agreed to serve as the named plaintiff in a related federal action
4    pending in New Jersey against Defendant FitFlop, among others, entitled <u>Glaberson v.</u>
5    <u>FitFlop USA, LLC</u>, Case No. 13-cv-02051-NLH-AMD (D.N.J.).   The Settlement
6    Stipulation provides that upon final approval of the settlement in this case, <u>Glaberson</u>
7    will also be dismissed with prejudice. (*See Stip. of Settlement*, ¶ III.B.)  Ms. Glaberson
8    reviewed relevant pleadings, and met with Plaintiff's counsel to provide information
9    regarding her purchase, and exposure and understanding of FitFlop's advertising at issue.
10   With respect to Angie Ojeda, Plaintiffs sought to add her as a named plaintiff in this case
11   before filing the second amended complaint.  The request was denied as untimely, not
12   because of any finding related to Ms. Ojeda's ability to act as a class representative. (*See*
13   *Order Re. Mt. to Amend.* [Doc. 95], 5:12–7:6.)  Additionally, similar Ms. Glaberson, Ms.
14   Ojeda reviewed relevant pleadings, and met with Plaintiff's counsel to provide
15   information regarding her purchase, and exposure and understanding of FitFlop's
16   advertising at issue.  Therefore, like Ms. Arnold, Ms. Glaberson and Ms. Ojeda also
17   actively participated and assisted in prosecuting the claims against Defendant.

18        Finally, the Court finds Class counsels' request for $1.325 million in attorneys'
19   fees and $180,000 in expenses fair and reasonable.  The attorneys' fee request is 25% of
20   the Settlement Fund and represents a fractional multiplier of 0.44 of Plaintiffs' counsel's
21   lodestar of $2,995,336.  Under either measure, the attorneys' fee request is fair and
22   reasonable given the substantial amount of work involved in prosecuting this case, the
23   legal and scientific issues presented, and the benefit to the Class that was achieved.  <u>See</u>
24   <u>In re Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 491 (E.D. Cal. 2010)
25   (acknowledging that the "typical range of acceptable attorneys' fees in the Ninth Circuit
26   is 20% to 33 1/3% of the total settlement value"); <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d
27   1043, 1051 (9th Cir. 2002) (approving multiplier of 3.65.).

28

In summary, the Court finds that the settlement amount, taking into account the attorneys' fee and service awards, is facially fair and reasonable.

### 4.     Discovery Completed Prior to Settlement.

Class counsel began investigating the veracity of Defendant's advertising claims in September 2010, approximately nine months before this lawsuit was filed. (*Blood Prelim. Approval Dec.* [Doc. 107-2], ¶ 4.) The investigations included the review and research of Defendant's advertising, pricing and components used in FitFlop Footwear and its competitors' products, and gathering scientific studies and industry statements regarding the ability of FitFlop Footwear and other toning shoe products to provide the advertised benefits. (*Id.*) They also researched and analyzed financial and sales information about FitFlop Footwear. (*Id.*)

Since this lawsuit was filed, the parties have engaged in a substantial amount of discovery.   Plaintiffs propounded three sets of written interrogatories, one set of document requests, and two sets of requests for admission, and conducted seven depositions. (*Blood Prelim. Approval Dec.*, ¶¶ 10, 13.) The discovery requests resulted in Defendant's production of approximately 473,022 pages of documents. (*Id.*) Plaintiffs also conducted discovery in London, England related to FitFlop's parent corporation, as well as third-party researches hired by FitFlop. (*Id.*, ¶ 20.)

Class counsel has also taken non-party depositions and issued approximately 17 third-party subpoenas that were served on Defendant's retail partners, the American Podiatric Medical Association, the QVC television network, and one of Defendant's former executives. (*Blood Prelim. Approval Dec.*, ¶ 10.)

The discovery efforts have also entailed a negotiated protective order, and significant discovery-related motion practice. (*Blood Prelim. Approval Dec.*, ¶ 10.) In total, Plaintiffs filed five motions to compel further discovery responses from Defendant. (*Id.*) Plaintiff Arnold was also deposed, provided documents and written discovery responses, and was the subject of a motion to compel by Defendant. (*Id.*)

1    Based on the above investigation and discovery, the Court finds that in entering
2    into the settlement, the parties fully understood the legal and factual issues surrounding
3    the case.  This factor, therefore, also favors approval of the settlement.

4

5         **5.    Involvement of a Government Entity.**

6         This lawsuit did not involve any governmental participants.  However, as stated
7    above, on December 23, 2013, CAFA Notice was served to the Attorney General of the
8    United States, and to state Attorneys General. (*Keough Dec.*, ¶ 4.)  None of these pareties
9    have filed an objection to the settlement.

10

11        **6.    Counsel's Experience and Views.**

12        Both parties are represented by experienced counsel and their mutual desire to
13   adopt the proposed settlement's terms, while not conclusive, "is entitled to significant
14   weight."  Fisher Bros. v. Cambridge Lee Indus., Inc., 630 F. Supp. 482, 488 (E.D. Pa.
15   1985).  Class counsel has extensive experience in litigating complex class actions, as well
16   as the expertise necessary to prosecute this case.  Defense counsel is a well-respected law
17   firm and is also very experienced in this type of litigation.
18        The parties' negotiation and adoption of the settlement terms, particularly in light
19   of counsels' familiarity with the law in this practice area, and the strengths and
20   weaknesses of their respective cases, strengthens this Court's decision to approve the
21   settlement.

22

23        **7.    The Class Members' Reaction to the Proposed Settlement.**

24        This factor presents the most compelling argument favoring settlement.  By order
25   dated December 19, 2013, this Court afforded any person legally entitled to object to the
26   settlement an opportunity to file written objections and appear at the fairness hearing.
27   Parties wishing to object were to file written objections by March 29, 2014.

28

11cv0973w

1    To date, only one objections has been filed, indicating that the vast majority of
2    Class Members and other concerned parties are likely satisfied with the resolution of this
3    case as set forth in the proposed settlement.

4

5            **8.    Mr. Narkin's objection.**

6    The sole objection was filed by Michael Narkin. (*See Objection* [Doc. 119].)  Mr.
7    Narkin raises three objections to the settlement: (1) the proposed settlement bears no
8    relationship to the alleged damages inflicted by Defendants on Plaintiffs; (2) Class
9    counsels' actions are indicia of a consciousness of unfairness and collusion; and (3) the
10   amount of attorney's fees and expenses constitutes over reaching, represents unjust
11   enrichment, and shocks the conscience.  (*Id.*, p. 1.)  The Court finds each of these
12   objections lack merit.

13   First, the Court finds that the settlement bears a close relationship to the Class
14   Members' damages.  This litigation involves claims of false advertising that resulted in
15   Class Members paying a premium for benefits that the FitFlop Footwear allegedly did not
16   provide.  The settlement enjoins Defendant from continuing with this conduct for five
17   years, unless Defendant possess and relies upon competent and reliable scientific
18   evidence that substantiates the claims. (*Stip. of Settlement*, ¶ IV.B.2.)  Additionally, Class
19   Members are entitled to refunds that represent the difference in price between the
20   subject footwear and regular footwear, and includes the possibility of receiving up to a
21   complete refund.

22   With respect to Mr. Narkin's second and third objections, the Court finds the
23   objections lack merit for the reasons stated in sections III. C.3 and C.9 of this order.  In
24   short, as demonstrated by the substantial investigation, discovery and motion practice
25   that has occurred, the complex legal and scientific issues raised by the claims and
26   defenses at issue, and the substantial benefit achieved both in terms of the Settlement
27   Fund and injunctive relief, the Court finds that the attorneys' fee, which represents 25%
28   of the Settlement Fund and represents a fractional multiplier of 0.44 of Class counsel's

lodestar of $2,995,336 constitutes a fair and reasonable fee award.  <u>See</u> <u>In re Vasquez</u>, 266 F.R.D. at 491 (acknowledging that the "typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); <u>Vizcaino</u>, 290 F.3d at 1051 (approving multiplier of 3.65).  Additionally, taking into account the extended settlement negotiations required to resolve the case, the Court finds Mr. Narkin's claim of an indicia of a consciousness of unfairness and collusion without merit.

For these reasons, the Court overrules Mr. Narkin's objections.

## 9.    <u>The Settlement did not Involve Collusion or Fraud.</u>

Another strong indication that the proposed settlement is fundamentally fair and did not involve collusion is that the parties reached the settlement after substantial negotiations.  Those negotiations began when the parties engaged in settlement discussions at the early neutral evaluation conference held before the Honorable Karen S. Crawford.  Thereafter, the parties attended two private mediations with Martin Quinn of JAMS San Francisco on October 9, 2012 and June 19, 2013.  Following the parties' last mediation session, they continued to engage in numerous telephonic conferences until the tentative settlement was reached at the end of July 2013.  Negotiations then continued until the parties agreed to all the terms of the settlement.

The settlement was, therefore, the product of continuous, arms-length negotiations, indicating that the settlement was not entered into lightly or without much consideration, and that those representing the Class have acted in accord with their responsibilities to the Class in securing both monetary and injunctive relief which adequately compensates the Class.  The Court finds that the settlement did not involve collusion or fraud.

## IV.    <u>Conclusion</u>

For the reasons set forth above, the Court finds that the parties' settlement is a fair and reasonable outcome given the presence of skilled counsel for all parties, the

litigation's complexity and expense if it were to continue and eventually reach trial, the settlement's significant present benefit to all Class Members, and the arms-length negotiations that resulted in the settlement itself.  The Court, therefor, approves the settlement as fair, reasonable and adequate to the Class, **OVERRULES** Mr. Narkin's objections to the settlement, and **GRANTS** the motion for final approval [Doc. 114].

The Court also approves the $5,000 service award to Plaintiff Arnold, the $1,500 service awards to Ms. Glaberson and Ms. Ojeda, and Class Counsel's request for $1.325 million in attorneys' fees and $180,000 in expenses.

**IT IS SO ORDERED.**

DATED:  April 28, 2014

_____
Hon. Thomas J. Whelan
United States District Judge

11cv0973w