1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  CHARLICE ARNOLD, on behalf of herself, all similarly situated and the general public | CASE NO: 11-CV-0973 W (KSC) |
| 13                          Plaintiffs, | **ORDER DENYING MOTION TO PROCEED** *IN FORMA PAUPERIS* **ON APPEAL [DOC. 123]** |
| 15  v. | |
| 16  FITFLOP USA, LLC, | |
| 17                          Defendant. | |

On May 27, 2014, Michael Narkin ("Applicant")  filed the pending Motion and Declaration for Leave to Proceed in Forma Pauperis ("IFP") on appeal.  On June 10, 2014, Plaintiffs filed an opposition and on June 23, 2014, Applicant filed a reply.

A party seeking to proceed IFP on appeal must file a motion in the district court.  See Fed R. App. P. 24(a)(1).  The determination of whether a plaintiff is indigent, and thus unable to pay the filing fee falls within the district court's discretion.  California Men's Colony v. Rowland, 939 F.2d 854, 858 (9th Cir. 1991), *reversed on other grounds*, 506 U.S. 194 (1993) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency.").

1    It is well-settled that a party need not be completely destitute to proceed IFP.
2  Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948).  To satisfy the
3  requirements of IFP status, "an affidavit [of poverty] is sufficient which states that one
4  cannot because of his poverty pay or give security for costs . . . and still be able to
5  provide himself and dependents with the necessities of life."  Id. at 339.  At the same
6  time, however, "the same even-handed care must be employed to assure that federal
7  funds are not squandered to underwrite, at public expense, . . . the remonstrances of a
8  suitor who is financially able, in whole or in material part, to pull his own oar."  Temple
9  v. Ellerthorpe, 586 F.Supp. 848, 850 (D.R.I. 1984).  District courts, therefore, tend to
10  reject IFP applications where the applicant can pay the filing fee with acceptable
11  sacrifice to other expenses.  See, e.g., Stehouwer v. Hennessey, 851 F.Supp. 316,
12  (N.D.Cal. 1994), *vacated in part on other grounds*, Olivares v. Marshall, 59 F.3d 109 (9th
13  Cir. 1995) (finding that district court did not abuse discretion in requiring partial fee
14  payment from prisoner with $14.61 monthly salary and $110 per month from family);
15  Allen v. Kelly, 1995 WL 396860 at *2 (N.D. Cal. 1995) (Plaintiff initially permitted to
16  proceed in forma pauperis, later required to pay $120 filing fee out of $900 settlement
17  proceeds); Ali v. Cuyler, 547 F.Supp. 129, 130 (E.D. Pa. 1982) (in forma pauperis
18  application denied: "plaintiff possessed savings of $450 and the magistrate correctly
19  determined that this amount was more than sufficient to allow the plaintiff to pay the
20  filing fee in this action.").  Moreover, the facts as to the affiant's poverty must be stated
21  "with some particularity, definiteness, and certainty."  United States v. McQuade, 647
22  F.2d 938, 940 (9th Cir. 1981).

23    Additionally, subsection (a)(3) provides that "[a]n appeal may not be taken *in*
24  *forma pauperis* if the trial court certifies in writing that it is not taken in good faith."  28
25  U.S.C. § 1915(a)(3).  Thus, notwithstanding whether the applicant is able to pay or
26  give security for the appellate costs, a district court may deny an IFP application if the
27  appeal is not taken in good faith.  Ellis v. United States, 356 U.S. 674, (1958).

28

Having read and considered the papers submitted, the Court finds the Applicant has failed to meet the requirements for IFP status under 28 U.S.C. § 1915.  Applicant's declaration identifies a total monthly household income of $1,818.  (*See IFP Dec.* [Doc. 123], ¶ 1.)  Although the Applicant also lists household expenses of $3,405 (*id.*, ¶ 9), Applicant admits that he is not paying $2,111 of those expenses (id., ¶¶ 9, 13).  Accordingly, Applicant's household income exceeds his household expenses by $569, which may be used to pay his appellate costs.

Moreover, the Court also finds that the Applicant's appeal is not taken in good faith.  Applicant, a former attorney who was the sole objector to the settlement, raised three objections to the settlement: (1) the proposed settlement bears no relationship to the alleged damages inflicted by Defendants on Plaintiffs; (2) Class counsels' actions are indicia of a consciousness of unfairness and collusion; and (3) the amount of attorney's fees and expenses constitutes over reaching, represents unjust enrichment, and shocks the conscience.  (*Objection* [Doc. 119], p. 1.)  In his reply in support of the IFP application, however, Applicant now appears to concede that his primary objection is "based on the denial of my right to scrutinize Class Counsel's discovery to see if it was extensive enough to determine what the case is worth, and if it examined the possibility of sub-classes that are not being properly represented."  (*Reply* [Doc. 128], p. 3.)

But as admitted in Applicant's objection to the settlement, Applicant was not allowed to review documents because of a protective order, which was provided to him.  (*See Objection* [Doc. 119], p.1.)   The order specifically identified a process for challenging confidential designations.  (*See Prot. Order* [Doc. 33], ¶ 13.)  Yet, despite Applicant's alleged desire to scrutinize the discovery, the docket demonstrates that he took no action to either challenge the parties' confidentiality designations or to seek leave from the magistrate judge or this Court to review discovery before the final-approval hearing.

Further, Applicant's unsupported assertion in the objection that the parties may not have "engage[d] in real discovery" was contradicted by the record.  As stated in this

1  Court's final approval order, the evidence established that Class counsel began
2  investigating the veracity of Defendant's advertising claims in September 2010,
3  approximately nine months before this lawsuit was filed.  (*Final Approval Order* [Doc.
4  121], p.11.)   The investigations included the review and research of Defendant's
5  advertising, pricing and components used in FitFlop Footwear and its competitors'
6  products, and gathering scientific studies and industry statements regarding the ability
7  of FitFlop Footwear and other toning shoe products to provide the advertised benefits.
8  (*Id.*)  They also researched and analyzed financial and sales information about FitFlop
9  Footwear.  (*Id.*)

10      After the lawsuit was filed, both parties engaged in a substantial amount of
11  discovery.  Plaintiffs propounded three sets of written interrogatories, one set of
12  document requests, and two sets of requests for admission, and conducted seven
13  depositions.  (*Final Approval Order*, p.11.)   The discovery requests resulted in
14  Defendant's production of approximately 473,022 pages of documents.  (*Id.*)  Plaintiffs
15  also conducted discovery in London, England related to FitFlop's parent corporation,
16  as well as third-party researchers hired by FitFlop.  (*Id.*)

17      Class counsel also took non-party depositions and issued approximately 17 third-
18  party subpoenas that were served on Defendant's retail partners, the American
19  Podiatric Medical Association, the QVC television network, and one of Defendant's
20  former executives.  (*Final Approval Order*, p.11.)

21      The discovery efforts were also demonstrated by significant discovery-related
22  motion practice.  (*See Final Approval Order*, p.11.)  In total, Plaintiffs filed five motions
23  to compel further discovery responses from Defendant.  (*Id.*)  Plaintiff Arnold was also
24  deposed, provided documents and written discovery responses, and was the subject of
25  a motion to compel by Defendant.  (*Id.*)   In short, Applicant's unsupported objection
26
27
28

1   based on the contention that the parties may not have engaged in "real discovery" was

2   completely contradicted by the record in this case.[1]

3        Finally, Applicant also seeks to justify his objection by asserting that denying him

4   access to discovery prevented Applicant from determining if "possible sub-classes such

5   as class members who may have suffered personal injury as a result of wearing the

6   FitFlop product" existed.  (*Reply*, p.2.)  Applicant contends this was important because

7   such class members "could be later barred from recovery because their sub-class had not

8   been recognized and properly represented."  (*Id.*)  However, the Second Amended

9   Complaint specifically excluded claims for personal injuries: "... Excluded from the Class

10  are Defendant and its officers, directors and employees, and those who purchased

11  FitFlop Footwear for the purpose of resale or *who assert claims for personal injury*."  (*Sec.*

12  *Amend. Compl.* [Doc. 97], ¶ 47.)  The Court's final approval order specifically stated

13  that "the operative second amended complaint . . . clarifies that Arnold is not seeking

14  recovery for personal injury on behalf of herself or the proposed class."  (*Final Approval*

15  *Order*, pp. 2–3.)[2]  Thus, Applicant's claimed need to determine if the lawsuit included

16  personal injury claims lacks merit.

17  //

18  //

19

20

---

21       [1] Applicant's reply does not assert that the two other objections raised in his Objection

22  to the settlement are being pursued in good faith on appeal.  Regardless, as explained in this

     Court's final approval order, the two remaining objections lacking in any factual support and

23  thus without merit.  (*See Final Approval Order*, 13:6–14:6.)

24       [2] In support of the argument that Applicant's appeal is not in good faith, Plaintiff

25  contends that the Applicant demanded $100,000 in exchange for dismissing his appeal.  In

     reply, Applicant does not dispute that he made the demand, but explains that the demand was

26  for a charity that he volunteers for, called Luvin Animal Rescue.  (*See Reply*, p. 3, Ex. A.)

     However, the charity appears to belong to Applicant and his family, who are identified as its

27  officers.  See http://oregoncompanies.us/luvin-animal-rescue.75583.company#top_info (July

28  2, 2014).

1    For the foregoing reasons, the Court **DENIES** Applicant's motion to proceed IFP
2    [Doc. 123] on appeal.

3

4    **IT IS SO ORDERED.**

5

6    **DATED:  July 3, 2014**

7
                                                      _____
8                                                     Hon. Thomas J. Whelan
                                                      United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv973 W